DAVID K. FIVESON, ESQ. (DF 2936)
BUTLER, FITZGERALD, FIVESON & McCARTHY
A Professional Corporation
Attorneys for Plaintiff
36 West 44th Street, Suite 816
New York, New York   10036
(212) 615-2200
(212) 615-2215 (Fax)
dfiveson@bffmlaw.com (e-mail)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
ROMEO & JULIETTE LASER HAIR REMOVAL, INC.,
d/b/a ROMEO & JULIETTE HAIR REMOVAL,

        Plaintiff,

    -against-                                08 Civ. 0442 (TPG)

ASSARA I LLC., d/b/a ASSARA LASER CENTER NYC,    ECF CASE
ASSARA LASER and MANHATTAN LASER HAIR
REMOVAL, JAY SHUMAN a/k/a JEROME SHUMAN,
WILL SHUMAN and DR. SAM TAYER,

        Defendants.

------------------------------------------------------------------------X


**MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS THE
COMPLAINT AND IN SUPPORT OF PLAINTIFF'S
<u>MOTION FOR PARTIAL SUMMARY JUDGMENT</u>**

Plaintiff Romeo & Juliette Laser Hair Removal, Inc., d/b/a Romeo & Juliette Hair Removal ("Romeo & Juliette" or "Plaintiff"), by its attorneys Butler, Fitzgerald, Fiveson & McCarthy, A Professional Corporation, respectfully submits this memorandum of law in support of plaintiff's motion, pursuant to Fed. R. Civ. P. 56(a), for partial summary judgment (i) awarding plaintiff judgment against defendants Assara I, LLC, d/b/a Assara Laser Center NYC, Assara Laser and Manhattan Laser Hair Removal ("Assara"), Jay Shuman a/k/a Jerome Shuman, Will Shuman and Dr. Sam Tayer (collectively with Assara, the "Assara Defendants") on the issue of liability on each of the claims in the Complaint, (ii) setting a schedule to conduct discovery on the issue of damages, and (iii) issuing a permanent injunction prohibiting any of the Assara Defendants, or any of their agents or employees, or any organization owned, operated, or affiliated with, any of the Assara Defendants, from using in their advertising or on their websites any references that incorporate all or part of Romeo & Juliette's trade name, or any similar name, or Romeo & Juliette's trademark. Plaintiff also submits this memorandum of law in opposition to the putative motion by the Assara Defendants for an order, pursuant to Fed. R. Civ. P. Rule 12(b)(6), dismissing the Complaint.

## PRELIMINARY STATEMENT

This is an action for relief under the Lanham Act, and under State statutory and common law, for trademark infringement and unfair competition arising from the Assara Defendants' use of Romeo & Juliette's trademark name "Romeo & Juliette Laser Hair Removal" to market Assara's competing services. The Assara Defendants used portions of that trade name and trademark both on Assara's website to identify the services Assara is offering to the consumer public, and in the Google search engine to describe and identify Assara's sponsored website link that appears in internet searches run through that search engine. Assara competes

with Romeo & Juliette in the New York City market for laser hair removal. As such, the Assara Defendants' use of Romeo & Juliette's name and trademarks in this manner has deceived, and will continue to deceive, the general public into believing either that Romeo & Juliette sponsors or approves of Assara's hair removal services and/or that Romeo & Juliette wants its customers and potential customers to use the hair removal services offered by Assara.

The Assara Defendants, by their attorney, have served and filed what they have characterized as a proposed motion to dismiss the complaint, under Fed. R. Civ. P. Rule 12(b)(6). Plaintiff, through its counsel, informed the Court that it had no objection to the Assara Defendants filing of the motion to dismiss. The Assara Defendants, however, have not served or filed the putative motion. Nor have they served or filed an Answer to the Complaint. Therefore, Romeo & Juliette respectfully submits that the Court treat the proposed motion to dismiss as an Answer denying the allegations in the Complaint.

Partial summary judgment in favor of Romeo & Juliette on the issue of liability and granting an injunction prohibiting the Assara Defendants from continuing to use plaintiff's trade name and trademark is appropriate here because it is indisputable that the Assara Defendants did use the trade name and trademark of Romeo & Juliette to market their own competing services and, as a matter of law, such conduct violates the Lanham Act and state law trademark and unfair competition principles.

## UNDISPUTED FACTS

Over the last eight years, Romeo & Juliette has maintained a successful business offering laser hair removal services to its clients and the general public in the New York City area using the trade name Romeo & Juliette Hair Removal. Plaintiff has expended millions of dollars, as well as the time and effort of its employees and agents, to market its name and the

2

marks "Romeo & Juliette" and "Romeo & Juliette Laser," to advertise using those trade names, and to create websites that prominently use those trade names. Plaintiff made these expenditures and these efforts to present Romeo & Juliette, and the services it provides, in a favorable light to promote sales and services to customers. (Complaint, ¶ 11, 12; Karavolas Aff., ¶¶ 3-5)

Plaintiff's expenditures and efforts were fruitful. The trade names "Romeo & Juliette," "Romeo & Juliette Laser," and "Romeo & Juliette Laser Hair Removal" have become well-known marks in the New York City market area that are readily identifiable as referring to hair removal services provided by Romeo & Juliette. As a result, Romeo & Juliette's website offerings have been very successful and the company has experienced annual growth in customers and revenues in excess of 30% since creating its website. (Complaint, ¶¶ 12 and 34; Karavolas Aff., ¶¶ 4-5)

Romeo & Juliette has actively marketed its services on the internet. In that regard, it maintains a web site. In addition, Romeo & Juliette purchases sponsored links from one or more search engine companies, such as Google, Inc. Internet Search engine companies sell sponsored links to advertisers, such as Romeo & Juliette, as a means to generate revenue from its search engine business. A sponsored link is then included in a report of internet search results provided by the search engine, but the sponsored link is separately identified in a portion of the results page designated for sponsored links. When an internet user clicks on the description of the sponsored link, that user than is provided access to the website identified in the sponsored link, which may or may not be a competitor of one or more websites listed in the reported results to the user's intended search. (Karavolas Aff., ¶¶ 8,11)

Prior to the fall of 2007, internet users who conducted a search using the terms "Romeo & Juliette" or "Romeo & Juliette Laser" or "Romeo & Juliette Laser Hair Removal"

3

were directed to Romeo & Juliette's website, where plaintiff offered its laser hair removal services to the consumer public, and provided other information about the business. Internet users making more general searches regarding hair removal likely would receive a search response containing a sponsored link to Romeo & Juliette's website. (Karavolas Aff., ¶ 8)

Prior to the facts and circumstances giving rise to this lawsuit, no one has ever used the name or mark "Romeo & Juliette" or "Romeo & Juliette Laser," or any similar mark or name, in the cosmetic surgery or hair removal business in the New York City area. (Karavolas Aff., ¶ 6)

Beginning in or around the summer of 2007, however, that changed. In approximately February 2006, the Assara Defendants opened a competing laser hair removal business in the New York City Area under the name "Assara Laser" and "Manhattan Hair Removal". (Complaint, ¶ 13; Karavolas Aff., ¶ 7) Then, in the summer of 2007, a little more than a year after starting their new business, the Assara Defendants made arrangements for a sponsored link with the Google Inc. search engine company. Specifically, the Assara Defendants arranged that when anyone from the consumer public using the Google search engine conducted a search using search phrases such as "Romeo & Juliette Laser" or "Romeo & Juliette Hair Removal" that internet user would be advised of both the web address for plaintiff's website, and what is referred to as a sponsored link to Assara's competing website. Defendants made such arrangements by purchasing the search phrase "Romeo & Juliette" from the internet search engine company Google Inc., and placing its competing website in a link using the phrase "Romeo & Juliette". (Complaint, ¶¶ 14-16; Karavolos Aff., ¶ 9)

The Assara Defendants used the phrase "Romeo And Juliette Laser" in the actual description of the direct link to Assara sponsored website link on Google. Moreover, when the

4

sponsored link appeared in the report of search engine search results the words "Romeo And Juliette Laser" that the Assara defendants used in the description of their website link actually were highlighted and underlined, which enabled any user to access that Assara sponsored website by clicking on the words "Romeo and Juliette Laser". (Complaint, ¶ 16; Karavolas Aff., ¶ 10 and Ex. A)

In addition to using the mark "Romeo and Juliette Laser" to describe its sponsored link to its competing website, the Assara Defendants also used those same words on Assara's own website home page, where Assara provides its actual and potential customers with information about the services it offers, the location of its offices, and the prices it charges for its services. Specifically, on its website Assara makes prominent reference to the name and mark "Romeo Juliette Laser" at the top of the Assara home page, immediately below its contact information, stating "Romeo Juliette Laser – Unlimited Hair Removal -- $599/month free consultations." (Complaint, ¶ 17; Karavolas Aff., ¶ 12 and Ex. B)

Assara's use of the phrases "Romeo And Juliette", and "Romeo Juliette Laser" in connection with their competing business was not done with the consent or authorization of plaintiff. (Complaint, ¶ 20; Karavolas Aff., ¶14)

Romeo & Juliette's business and reputation has been damaged by reason of lost sales and diminution of good will and business reputation and will continue to be damaged unless the Court enjoins the Assara Defendants. (Complaint, ¶¶ 21, 28, 32, 36, 39 and 42; Karavolas Aff., ¶ 15)

**LEGAL ARGUMENT**

**POINT I**

**THE CONDUCT OF THE ASSARA DEFENDANTS VIOLATES
THE LANHAM ACT, AND STATE LAW FOR TRADEMARK
INFRINGEMENT AND UNFAIR COMPETITION**

In the First and Second Counts of its complaint, Romeo & Juliette asserts claims

for trademark infringement under § 32(1) of the Lanham Act, and for false designation of origin

under § 93(a) of the Lanham Act, which is codified at 15 U.S.C. § 1114(1) and 15 U.S.C. §

1125(a), respectively.  In addition, in the Fourth and Fifth Counts, Romeo & Juliette asserts State

law trademark claims and a claim under the State Deceptive Trade Practices statute, codified at

NYCBL § 349.  Those claims are governed under essentially the same standards that are

applicable to the Lanham Act claims.[1]

To recover on these four claims, a plaintiff must show first that it owns a valid

mark that the defendant used in commerce, without the plaintiff's consent, in connection with the

sale or advertising of defendant's goods or services.  Second, a plaintiff must then show that

defendant's use of the mark is likely to cause consumer confusion as to the origin or sponsorship

of the defendant's goods or services.  *Merck & Co., Inc. v. Mediplan Health Consulting, Inc.,*

425 F. Supp. 2d 402, 411 (S.D.N.Y. 2006), citing *1-800 Contacts, Inc. v. WhenU.Com, Inc.,* 414

F.3d 400, 406-07 (2d Cir. 2005) and *Savin Corp. v. Savin Group,* 391 F. 3d 439, 456 (2d Cir.

2004).  Romeo & Juliette presents on this motion evidence that indisputably establishes each of

these elements.[2]

---

[1] *Merck & Co., Inc. v. Mediplan Health Consulting, Inc.,* 425 F. Supp. 2d 402, 410 & N.6 (S.D.N.Y. 2006) (citing cases).

[2] Romeo & Juliette asserts in its Third Count another claim for trademark dilution under § 43(c) of the Lanham Act, which is codified at 15 U.S.C. § 1125(c).  In order to recover on a trademark dilution claim, a plaintiff must establish (i) that its mark is famous within the meaning of the statute; and (ii) defendants' use of the mark caused

**A.    Romeo & Juliette Has A Valid Trademark In Its**
**Name And In Phrases Incorporating Its Name**

There hardly can be any dispute that the phrases "Romeo & Juliette" and "Romeo & Juliette Laser" are valid trademarks.  The use of a shortened form of its corporate name by Romeo & Juliette is one of the quintessential manners in which a protectible trademark arises.  Although the Romeo & Juliette name is not registered as a trademark the name is still entitled to Lanham Act protection if it would qualify for registration.  *See Courtenay Communications Corp. v. Hall,* 334 F.3d 210, 214 & n.2 (2d Cir. 2003) *citing Thompson Med. Co., Inc. v. Pfizer Inc.*, 753 F.2d 208, 215-16 (2d Cir. 1985).  *See also Merck*, 425 F. Supp. 2d 402, & n.7 (Section 1125(a) protects unregistered trademarks).

A mark qualifies for registration when it is capable of distinguishing the applicant's goods [or services] from those of others."  *Courtenay*, 334 F.3d at 214 & n.2 *citing Two Pesos, Inc. v. Taco Cubana, Inc.*, 505 U.S. 763, 768 (1992).  A mark distinguishes the services of a business by being either "inherently distinctive" or by being "distinctive by virtue of an acquired secondary meaning."  *Id.*

Here, there hardly can be any dispute that Romeo & Juliette's eight year history at using portions of its unique corporate and business trade name to advertise its services is an inherently distinctive way to distinguish plaintiff's services from those of its competitor.  Moreover, as set forth in the Affidavit of Mr. Karavolas, as a result of the success of Romeo & Juliette business and the extent to which its name has been marketed in the hair removal business in New York City, the mark "Romeo & Juliette" has acquired secondary meaning in that market.  (Complaint, ¶¶ 12 and 34; Karavolas Aff., ¶ 4-5)

---

actual dilution of the mark.  *Merck*, 425 F. Supp. 2d at 416 citing *Savin Corp.*, 391 F. 3d at 455.  The same evidence proferred by Romeo & Juliette on this motion satisfies these elements as well.

**B.    The Assara Defendants' Use Of Romeo &**
**Juliette's Name Obviously Causes Confusion**

Nor is there any dispute that the manner in which Assara used the name "Romeo & Juliette" causes confusion to consumers. Likelihood of confusion exists when "'an appreciable number of ordinarily prudent purchasers are likely to be misled, or indeed simply confused, as to the source of the goods (or services) in question'" or "are likely to believe that the mark's owner sponsored, endorsed, or otherwise approved of the defendant's use of the mark." *Merck*, 425 F. Supp. 2d at 411 *citing Savin*, 391 F.3d at 456 and *Tommy Hilfiger Licensing, Inc. v. Nature Labs, LLC*, 221 F. Supp. 2d 410, 414 (S.D.N.Y. 2002).

Here, the Assara Defendants used, and will continue to use, Romeo & Juliette's name and trademark in two different manners. First, they used the Romeo & Juliette name on Assara's own website to describe services Assara offers to the consumer public. It is hard to imagine that there can be a better example of sponsorship confusion than when a defendant uses a competitor's name to identify and advertise its own services. Second, the Assara Defendants used the Romeo & Juliette name in the description of Assara's sponsored link on the Google search engine. Each use by the Assara Defendants of their competitor's trade name indisputably is likely to mislead the consumer public regarding the source, origin, sponsorship endorsement, and/or approval of Assara's hair removal services.

**1.    Plaintiff Is Entitled To Judgment As A Matter**
**Of Law For Defendants' Direct Reference**
**To Romeo & Juliette On Assara's Website**

The evidence proffered by plaintiff on this motion establishes indisputably that the Assara Defendants used the name Romeo & Juliette on the Assara website to identify services that Assara was offering to the consumer public. (Karavolas Aff. ¶¶ 10, 12 and Exs. A and B) The use of Romeo & Juliette's name on Assara's website is deceptive and confusing as a

matter of law, and is precisely the type of situation which the relevant Federal and State laws for Trademark Infringement and Unfair Competition are designed to prevent.

In *Movado Group, Inc. v. Matagorda Ventures, Inc.,* 2000 WL 1855120, at *5 (S.D.N.Y. Dec. 19, 2000); the defendant listed the plaintiff's trademark for Concord watches as a brand on its website, although it did not sell Concord watches. The Court concluded that plaintiff was entitled to summary judgment on the claims of trademark infringement and unfair competition with respect to Defendants' use of the Concord trademark. The Court noted, in language that is particularly apropos in this case, that:

> In the cyberspace context, the concern is that potential customers of one website will be diverted and distracted to a competing website. The harm is that the potential customer believes that the competing website is associated with the website the customer was originally searching for and will not resume searching for the original website.

2000 WL 1855120, at *5.

Likewise, in *Merck & Co., Inc. v. Mediplan Health Consulting, Inc.*, 425 F. Supp. 2d 402 (S.D.N.Y. 2006), the Court held that it is improper for a defendant to use on its website a competitor's name to describe the defendant's product or services. In *Merck,* the plaintiff owned the "Zocor" trademark and sued a group of Canadian internet pharmacy operators selling generic versions of the drug under the heading "generic Zocor" on their websites. The Court concluded that use of the Zocor mark in close proximity to the word generic could cause consumer confusion as to the origin or sponsorship of the product being sold on defendants' websites. *Id.,* at 414.

Similarly, in *Courtenay Communications Corp. v. Hall*, 334 F.3d 210, 214 n. 1 (2d Cir. 2003), the plaintiff sued the defendant competitor for using the plaintiff's mark on the defendant's website adjacent to a hyperlink which was then linked to endorsements of the

defendant.  The Court noted that the use of the mark in that way could support a claim for false endorsement under the Lanham Act.

These cases all demonstrate that a defendant's use of a plaintiff's trademark on its website without the plaintiff's consent is likely to confuse or mislead the consumer.  Since the Assara Defendants' use of Romeo & Juliette's mark on the Assara website serves no other purpose than to lure customers away from Romeo & Juliette's website, it is appropriate to award partial summary judgment on the issue of liability and on the issue of an injunction in connection with plaintiff's claims for trademark infringement and unfair competition.

2.    **Plaintiff Also Is Entitled To Judgment As A Matter Of Law For Defendants' Directly Referring To Romeo & Juliette In The Description Of Assara's Sponsored Link On Google**

The use of Romeo & Juliette's trademark by the Assara Defendants to describe its sponsored link on Google is also deceptive and confusing as a matter of law.  In their putative motion to dismiss the complaint, the Assara Defendants principally rely on the case entitled *Merck & Co., Inc. v. Mediplan Health Consulting, Inc.*, 425 F. Supp. 2d 402, 415 (S.D.N.Y. 2006), which the Assara Defendants argue permits a competitor to purchase and use sponsored links on internet search engines such as the Google search engine.  That case, however, supports Rome & Juliette's claims for relief in this case.  In *Merck*, the defendants used the Zocor mark both on its own website and in connection with a search engine sponsored website link.  The portion of the holding addressed to the use of the mark on the defendants' website is addressed above.  As for the use of the mark in the search engine context, the court determined that the Zocor mark was only used by the defendants in the sense that a computer user typing that term in a search would trigger the search engine to include in the search results a reference to a sponsored link to the defendants' separately identified, sponsored website.  The court ruled that

this "internal use" of the mark as a keyword to trigger a reference to a sponsored link is not a "use" of the mark in a trademark sense. Id. 425 F. Supp. 2d at 415.

It is apparent from *Merck*, and subsequent cases citing *Merck*, that although the law does not prohibit a competitor from purchasing a sponsored link on an internet search engine, the law does prohibit the use of a competitor's name in a way that confuses whether his competitor is actually sponsoring or approving of the link to the defendant's website. Here, Romeo & Juliette has documentary evidence showing that the Assara Defendants have gone far beyond the permissible activity of purchasing a sponsored link from a search engine company. That evidence shows that the Assara Defendants improperly used the trademark name of Romeo & Juliette in the description and identification of Assara's sponsored website link that appears on any Google search engine results. This is in stark contrast with the sponsored link in *Merck*.

The Courts have found that such use of a trademark goes beyond the solely internal use that was approved in *Merck* and constitutes a trademark infringement. For instance, in *Hamzik v. Zale Corp.,* 2007 WL 1174863 (N.D.N.Y. Apr. 19, 2007), the plaintiff held the trademark "The Dating Ring" and sued the defendant for trademark infringement for purchasing the keywords "dating ring" from various search engines. When a computer user searched on that keyphrase on the Yahoo and Google search engines, it returned a result that displayed "Dating Rings—Zales" and "Dating Ring—Zales". The Court specifically distinguished the facts from *Merck*, noting that "there may be facts demonstrating that plaintiff's trademark *does* appear on the displays associated with the goods or documents associated with the goods or their sale." The Court thereby found that the plaintiff stated a valid claim for trademark infringement.

The proved facts in this case are directly analogous to the alleged facts in the *Hamzik* case, and therefore establish a trademark infringement and unfair competition by the

11

Assara Defendants.  The use of Romeo & Juliette's name in the description or identification of Assara's sponsored website link serves no other purpose than to deceive and confuse the consumer and lure potential customers away from plaintiff's website.  Therefore, it is appropriate to award partial summary judgment for defendant's use of plaintiff's name and mark on Assara's sponsored link, and Romeo & Juliette as a matter of law is entitled to partial judgment on the issue of liability on the Federal and State law claims of trademark infringement and unfair competition and an injunction against the Assara Defendants to bar any further violations of those laws.

## POINT II

### THE COMPLAINT SETS FORTH ALLEGATIONS OF
### THE INDIVIDUAL DEFENDANTS' MISCONDUCT

Defendants also assert in their putative motion to dismiss that there are no allegations the individual defendants took part in the trademark infringement and unfair competition.  This is simply incorrect.

The Complaint alleges the three individual defendants are the principals of defendant Assara I LLC (Complaint ¶¶ 3-5), and that the defendants all engaged in the infringement and unfair competition.  (Complaint ¶¶ 18-23)

In light of the evidence that the individual defendants are the principals in Assara I LLC, that the infringement was exhibited on Assara's sponsored link and website, and that the defendants collectively caused the infringements, plaintiff is entitled to judgment against the individual defendants *See, e.g., Messina v. Mazzeo*, 854 F. Supp. 116, 127 (E.D.N.Y. 1994).  *See also Silicon Knights, Inc. v. Crystal Dynamics, Inc.*, 983 F. Supp. 1303, 1308-09 (N.D. Cal. 1997).

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss should be denied and plaintiff's cross-motion for summary judgment should be granted in all respects, to wit, the Court should issue an order (i) awarding plaintiff judgment on liability against the Assara Defendants on each of the claims in the Complaint; (ii) setting a schedule to conduct discovery on the issue of damages; and (iii) issuing an injunction prohibiting any of the Assara Defendants, their agents and employees, or any organization owned, operated or affiliated with any of them, from referring in their advertising or on their websites to Romeo & Juliette's trade name, or any similar name that incorporates all or part of Romeo & Juliette's trade name, or any of Romeo & Juliette's trademarks.

Dated: New York, New York
      June 4, 2008

BUTLER, FITZGERALD, FIVESON
  & McCARTHY
A Professional Corporation
Attorneys for Plaintiff

By: _____
      David K. Fiveson, Esq. (DF 2936)
A Principal of the Firm
36 West 44th Street, Suite 816
New York, New York   10036
(212) 615-2200

13

STATE OF NEW YORK   )
                             ) ss.:
COUNTY OF NEW YORK  )

        JOEL JEAN, being duly sworn, deposes and says:  that deponent is not a party to the action, is over 18 years of age, resides at 36 West 44th Street, Suite 816, New York, New York 10036, and that on the 4th day of June, 2008 deponent served the within **MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE COMPLAINT AND IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT** upon:

| | |
|---|---|
| Will Shuman, Esq. (individually and<br>  as attorney for all defendants)<br>235 West 48th Street<br>Apartment 29D<br>New York, New York  10036<br>will@assaralaser.com (e-mail) | Jay Shuman a/k/a Jerome Shuman<br>235 West 48th Street<br>Apartment 29D<br>New York, New York  10036<br><br>Assara I LLC<br>235 West 48th Street<br>Apartment 29D<br>New York, New York  10036 |

by leaving the document in sealed envelopes, separately addressed to each of the persons referenced above, and leaving those envelopes with a security guard at that building who was told in my presence by someone at the aforementioned address that he should accept service on behalf of those persons (the security guard who was told to accept service is approximately 45 years old with olive skin, black hair, brown eyes, approximately 6 feet 3 inches tall, and wears glasses).

        On that same date, I also served the document upon:

| | |
|---|---|
| Assara I LLC<br>7 West 51st Street, 2d Floor<br>New York, New York  10019 | Dr. Sam Tayer<br>7 West 51st Street, 2d Floor<br>New York, New York  10019 |

by leaving the document in sealed envelopes, separately addressed to each of the persons referenced immediately above, and leaving those envelopes with a man at that address who

identified himself as Mark Bakker and who said he was the executive manager of Assara LLC and was authorized to accept service on behalf of Assara I LLC and Dr. Sam Tayer.

JOEL JEAN

Sworn to before me this
5 day of June, 2008

Notary Public

GERALDINE PERRY
Notary Public, State of New York
No. 01PE487-9187
Qualified in New County
Commission Expires Dec. 1, 2010