WILL SHUMAN (WS 3237)
Counsel for defendants
235 West 48th Street
Apartment 29D
New York, NY 10036
Telephone:     646.964.5204
will@assaralaser.com (e-mail)


UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____x

ROMEO & JULIETTE LASER HAIR
REMOVAL, INC. d/b/a ROMEO &
JULIETTE HAIR REMOVAL,

      Plaintiff,

ASSARA I LLC, d/b/a ASSARA LASER
CENTER NYC, ASSARA LASER, et al.,          08 Civ. 0442 (TPG)

      Defendants.                 ECF CASE (electronically filed)
_____x


**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT**

I, on behalf of defendant Assara I LLC (the "company") and defendants Jay Shuman, Will Shuman and Dr. Sam Tayar (the "individual defendants" and collectively, with the company, the "defendants"), respectfully submit this memorandum of law in support of defendants' motion, pursuant to Fed. R. Civ. P. 56(a), for summary judgment dismissing plaintiff's claims in their entirety and in opposition to plaintiff's motion, pursuant to Fed. R. Civ. P. 56(a), for partial summary judgment (i) on the issue of liability, (ii) setting a schedule to conduct discovery on the issue of damages, and (iii) issuing a permanent injunction against the defendants.

## PRELIMINARY STATEMENT

Plaintiff Romeo and Juliette Laser Hair Removal, Inc. ("Romeo") commenced this litigation with the filing of his complaint on January 17, 2008, approximately 8 months after the complained of actions were alleged to have taken place. Romeo's complaint contains few factual allegations supporting its theory of trademark infringement liability. Upon the filing of its motion for summary judgment, Romeo submitted an affidavit of its owner, Christian Karavolas, which similarly contained few additional factual allegations that those contained in the complaint.

To bolster its argument, Romeo has submitted two computer "screenshots," which appear to be from two different computers, do not bear a date stamp, and have not been authenticated by a party with direct knowledge of the website and/or Google advertising campaign. Further Romeo cannot produce any admissible evidence that the alleged infringement actually happened, or if it did happen, when it happened. If fact, The circumstances suggest otherwise. First, the company has submitted an affirmation of its

1

counsel, manager, and member containing his testimony that the company has not directed or caused any of its employees to direct an internet advertising company to display Romeo's name in the headline of a Sponsored Link.  Second, Google's Editorial Policies, which govern Sponsored Links advertising, prohibit such a usage of a competitor's mark. Additionally, Google accepts and investigates complaints of alleged trademark infringements to prevent trademark violation on their AdWords program.  Further, Romeo makes no claim, nor can he, that it did not contact the company or any of the company's employees  to "inform" them that an alleged infringement was taking place.

Romeo also fails to produce any evidence, or make any factual allegation, to suggest that it, in fact, suffered any damages from the alleged infringement.  Romeo fails to introduce any evidence from which a trier of fact can determine a definite period of time during which the alleged infringement could have taken place.  Romeo merely introduces two "snapshots" in time.

On these grounds, and the grounds below stated, defendants respectfully request that the Court grant defendant's motion for summary judgment in favor of defendants, dismissing the case in its entirety and deny plaintiff's motion for partial summary judgment.

**SUMMARY JUDGMENT STANDARD**

The defendants move for a summary judgment in their favor on all causes of action because no rational trier of fact could find that the defendants are liable for trademark infringement, or plaintiff's related state law claims.

Summary judgment is proper where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying the evidence which it believes demonstrates the absence of a genuine issue of material fact." Celotex v. Catrett, 477 U.S. 317, 323 (1986). The non-moving party must then identify specific facts "that might affect the outcome of the suit under the governing law," thus establishing that there is a genuine issue for trial. Fed. R. Civ. P 56(c).

When evaluating a motion for summary judgment, the court views the evidence through the prism of the evidentiary standard of proof that would pertain at trial. Anderson v. Liberty Lobby Inc., 477 U.S. 242, 255 (1986). The court draws all reasonable inferences in favor of the non-moving party, including questions of credibility and the weight that particular evidence is accorded. See, e.g., Mason v. New Yorker Magazine, Inc., 501 U.S. 496, 520 (1992). Summary judgment is appropriate where a rational trier of fact could not find for the non-moving party based on the record as a whole. Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986).

## SUMMARY JUDGMENT IS PROPER AGAINST THE PLAINTIFF

**A.** **The claims against the individual defendants should be dismissed**

Romeo's causes of actions should be dismissed in their entirety, with prejudice, against each of the individual defendants. The crux of Romeo's claims is that the company used Romeo's trademarks in connection with the company's laser hair removal internet search engine Sponsored Link advertising. In its motion for partial summary judgment,

Romeo makes no further factual claims vis a vis the individual defendants' conduct Romeo is well-aware that the company conducts business and otherwise operates as is a limited liability company, and that its members are therefore provided with statutory protection. Romeo's claims against each of the individual defendants should therefore be dismissed for failure to state a claim.

Romeo's claims against defendant Sam Tayar further fail because of insufficient service of process. Defendant Tayar is a resident of Montreal, Canada. Fed. R. Civ. P. 4(f) requires that service of process to an individual in Canada be affected through the provisions of the Hague Convention. As Romeo has not affected service on defendant Tayar in accordance with the Hague Convention, it cannot maintain any causes of action against defendant Tayar.

**B.    The trademark claims fail as a matter of law**

"In order to prevail on a trademark infringement claim . . . a plaintiff must establish that (1) it has a valid mark that is entitled to protection under the Lanham Act; and that (2) the defendant <u>used</u> the mark, (3) in commerce, (4) in connection with the sale or advertising of good and services, (5) without the plaintiff's consent." <u>1-800 Contacts, Inc.</u> v. <u>WhenU, Inc.</u>, 414 F.3d 400 (2d Cir. 2005) (emphasis added). Further, "[n]ot only are 'use,' 'in commerce,' and 'likelihood of confusion' three distinct elements of a trademark infringement claim, but 'use' must be decided as a threshold matter because, while any number of activities may be 'in commerce' or create a likelihood of confusion, no such activity is actionable under the Lanham Act absent the 'use' of a trademark." <u>Id.</u> at 412.

"A 'trademark use' . . . is one indicating source or origin." <u>Pirone</u> v. <u>MacMillan, Inc.</u>, 894 F.2d 579, 583 (2d Cir. 1990). The Lanham Act defines such a use as occurring in

4

the context of services "when [the mark] is used or displayed in the sale or advertising of

services and the services are rendered in commerce."  15 USC § 1127.

Romeo argues that the company, in the two instances alleged in Romeo's

complaint, internally used on its website "hidden links and texts," which would somehow

"deceive the public that plaintiff was the sponsor or origin of the laser hair removal

services offered by defendants."  Romeo tells a tale which is familiar to this Court: The

Second Circuit has spoken on this point of trademark usage:

> A company's internal utilization of a trademark in a way that does
> not communicate it to the public is analogous to an individual's private
> thoughts about a trademark.  Such conduct simply does not violate the
> Lanham Act, which is concerned with the use of the trademarks in
> connection with the sale of goods or services in a manner likely to lead to
> consumer confusion as to the source of such goods or services.  1-800
> Contacts, 414 F.3d at 409.  This limitation fits within the purposes of
> trademark law: unless a defendant has communicated some source-
> indicating mark to the public, that defendant has done nothing to confuse the
> public as to its source, and should not be subject to suit under the Lanham
> Act.

See, e.g., Park 'N Fly, Inc. v. Dollar Park & Fly, 469 U.S. 189, 197-98 (1985).  In

Merck & Co., Inc. v. Mediplan Health Consulting, Inc., 425 F. Supp.2d 402, 415 (S.D.N.Y.

2006), this Court granted defendant's motion to dismiss trademark claims regarding

defendants' purchase of the plaintiff's trademark "ZOCOR" as a keyword from internet

search engines.  The Court held that the defendants' purchase of the trademark was an

"internal use" and did not constitute a "trademark use" because the defendants did not

place the plaintiff's marks on "any goods or containers or displays or associated

documents, or use them in any way to indicate source or sponsorship."  Id.  Romeo

apparently realizes its error in its legal argument and switched positions by now arguing

wit defendants (citing <u>Merck</u>) that "law does not prohibit a competitor from purchasing a Sponsored Link on a search engine."

The company has not, market or does not, sell any services using that term as an identifier to the public.  Further, Romeo has produced no, and can produce no, admissible evidence to dispute these facts.  Romeo has therefore failed to allege any factual basis for its claim that the company used plaintiff's trademark in any way that indicates source or origin.

Romeo's federal dilution claim under 15 USC § 1125(c) also fails to be supported by sufficient factual allegations.  The relevant statute provides:

> The owner of a famous mark shall be entitled, subject to the principles of equity and upon such terms as the court deems reasonable, to an injunction against another person's <u>commercial use in commerce</u> of a mark or trade name, if such use begins after the mark has become famous and causes dilution of the distinctive quality of the mark . . . .

15 U.S.C. § 1125(c)(1) (emphasis added).  Romeo has failed to allege any factual allegations of the company's "use" of subject mark within the meaning of the Lanham Act. This claim accordingly fails as well.

Next, Romeo argues that the Google Inc. Sponsored Link advertisement of the company, in the two instances alleged in Romeo's complaint, contained Romeo's mark, which was linked to the company's website.  Romeo has produced no admissible evidence supporting this claim.  Romeo submits two computer screenshot printouts in support of its motion for partial summary judgment: (1) a screenshot printout of a Google search, which displays a text search of the words "romeo & Juliette laser" [sic] and displays the following Sponsored Link:

<u>Romeo And Juliette Laser</u>
Unlimited Laser Hair Removal

$599/Month.  Free Consultations
www.assaralaser.com
New York, NY

and (2) a screenshot printout of what he purports to be the Reach Local mirror website of

Assara's website, displaying in the top field the phrase "romeo juliette laser – Unlimited

Laser Hair Removal - $599/Month. Free Consultations."  [sic]  The first screenshot

displays a clock showing the time as 12:56 p.m., and the second screenshot displays a clock

showing 5:10 p.m.  The screenshots appear to be taken from two different computers – as

the graphical display of the windows "toolbar" is different in each shot.  Neither shot

provides any evidence of the date on which they were taken.  At best, they comprise two

"snapshots" of two indeterminate points of time.

 The website printouts are inadmissible evidence.  Romeo cannot authenticate them

with testimony from any person with personal knowledge of the website's contents.[1]  To

authenticate website printouts, it is not enough for the person who went to the website and

printed out the websites pages to authenticate them.  A person with personal knowledge of

the accuracy of the contents of the internet printouts must provide testimony.  In Internet

Specialties, the sister federal district court held:

>  "[M]ost of plaintiff's arguments are addressed to print-outs from websites
> and the question of their admissibility.  Plaintiff properly contends that
> these print-outs are inadmissible unless properly authenticated.
> *Defendant's argument, that they could only be "authenticated" by the
> person who went to the website and printed out the home page, is
> unavailing*.  It is now well recognized that "Anyone can put anything on
> the Internet.  No website is monitored for accuracy and nothing contained
> therein is under oath or even subject to independent verification absent
> underlying documentation . . . hackers can adulterate the content on any
> website from any location at any time.  For these reasons, *any evidence
> procured off the Internet is adequate for almost nothing . . . .*" To be

---

[1] See, e.g., Internet Specialties West, Inc. v. ISP West, 2006 WL 4568796, at *2 (C.D. Ca.
Sept. 19, 2006)

authenticated, someone with **knowledge** of the **accuracy of the contents** of the **internet printouts** must testify. (emphasis added; internal citation omitted.)

Romeo has not authenticated them with testimony from anyone associated with the website, let alone anyone with personal knowledge to establish who maintained the website, who authored the search terms allegedly shown on the website, or who can verify the accuracy of the displayed information the webpage and the time and date which at which the screenshots were taken. Google AdWords Editorial Policy prohibits the violative conduct that Romeo claims occurred.

As Romeo has not, and cannot produce, admissible factual evidence on which a rational trier of fact could find the defendants are liable for trademark infringement, each of the trademark claims must be dismissed.

III.    **STATE LAW CLAIMS**

If the Court dismisses Romeo's federal claims, it should as well, dismiss Romeo's state law claims. Romeo alleges no other basis for the Court's jurisdiction. The Court should decline to exercise supplemental jurisdiction over Romeo's remaining state law claims. See 28 USC § 1367(c)(3).

**CONCLUSION**

WHEREFORE, the defendants request an Order granting their motion for summary judgment dismissing plaintiff's causes of action, in their entirety, denying plaintiff's motion for partial summary judgment (1) awarding plaintiff judgment against the defendants on the issue of liability, (2) setting a schedule to conduct discovery on the issue of damages, and (3) issuing a permanent injunction against the defendants, and grant to the

defendants an award of attorney's fees and costs, and for any such further relief as this

Court may deem just and proper.


Dated:        New York, New York                    WILL SHUMAN,
              July 8, 2008                          *counsel for the defendants*


                                                    /s/ will shuman
                                                    235 West 48th Street
                                                    Apartment 29D
                                                    New York, NY 10036

TO:     Butler, Fitzgerald, Fiveson & McCarthy
        David K. Fiveson, Esq.
        David J. McCarthy, Esq.
        36 West 44th Street, Suite 816
        New York, New York 10036
        (212) 615-2215

        Attorneys for Plaintiff Romeo &
        Juliette Laser Hair Removal,
        Inc., d/b/a Romeo & Juliette Hair
        Removal