UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

ROMEO AND JULIETTE LASER                    :
HAIR REMOVAL, INC.,
                                             :
                              Plaintiffs,
                                             :
              - against -
                                             :
ASSARA I, LLC, et al.,
                                             :
                              Defendants.
--------------------------------------------------------x

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:   7/2/2013
```

**MEMORANDUM
DECISION & ORDER***

08 Civ. 442 (TPG) (FM)

**FRANK MAAS**, United States Magistrate Judge.

I.    <u>Introduction</u>

This suit pits two competing laser hair-removal businesses against each other in a dispute involving claims of false advertising, unfair competition, and defamation.  In November 2012, the plaintiff, Romeo & Juliette Laser Hair Removal, Inc. ("Romeo"), moved to compel the defendants (collectively "Assara") to respond to several allegedly outstanding discovery requests and to remedy certain of their existing responses that Romeo believed were insufficient.  Assara responded with its own motion to compel, seeking certain documents that Romeo allegedly had failed to produce.  Following a discovery conference in which I granted Romeo's motion and denied Assara's requests in substantial part, Romeo filed an application for attorneys' fees pursuant to Rule 37 of the

_____

      *       This Decision and Order was prepared with the assistance of Ryan Chabot, a second-year student at Columbia Law School who is serving as a summer intern in my Chambers.

Federal Rules of Civil Procedure.  In that application, Romeo, which is represented by the law firm Butler, Fitzgerald, Fiveson & McCarthy, seeks reimbursement for $24,562.50 in fees that it allegedly accrued in connection with the discovery dispute.  For the reasons set forth below, Romeo's fee application is granted, but the amount of the award is reduced to $6,945.

II.    Background

On November 28, 2012, Romeo's counsel, Claudia G. Jaffe, Esq., wrote to the Court requesting a conference to address a number of discovery issues.  (Aff. of Claudia G. Jaffe, Esq., sworn to on Jan. 18, 2013 ("Jaffe Aff.") (ECF No. 114), ¶ 3).  Ms. Jaffe's principal grievance concerned Assara's responses to Romeo's Requests to Admit, which she alleged were deficient and did not comply with Rule 36 of the Federal Rules of Civil Procedure.  (Id. ¶¶ 16-18).  Ms. Jaffe also complained that Assara had failed to produce certain corporate documents identifying Assara's principals that Assara previously had been ordered to provide.  (Id. ¶¶ 4-10).  Finally, Ms. Jaffe claimed that Maxine Tayar, a third-party witness (and the wife of one of the individual defendants), had been unresponsive to her requests to schedule a deposition, despite having been served with a Court-ordered subpoena to appear.  (Id. ¶¶ 11-15).  The letter requested an order (a) deeming admitted all matters in the Requests for Admission as to which Assara's responses were inadequate, (b) compelling Assara to produce corporate documentation sufficient to identify its members, and (c) directing Ms. Tayar to appear for a deposition.  (Id. ¶ 3).

On December 4, 2012, Assara's counsel, Will Shuman, Esq., himself a defendant in this action, responded to Romeo's letter.  In that response, Assara raised a number of its own complaints regarding discovery responses allegedly due from Romeo. Among other things, Assara's letter sought an order compelling Romeo to produce documents relating to its sales records and its Google Analytics and other website tracking records.  Because neither side had complied with my Individual Practices or the Local Civil Rules, I directed the parties to submit revised letters itemizing their concerns in a manner consistent with Local Civil Rule 37.1.  (ECF No. 57).  I also scheduled an in-person conference for December 27, 2012.  (Id.).  On December 12, Romeo and Assara each submitted revised letters.  Romeo submitted a further response to Assara's letter-motion on December 17.

The discovery conference was adjourned twice – once at Ms. Jaffe's request and once at the request of Mr. Shuman, who represented that he was unavailable because he needed to "appear" in an unrelated trial taking place in another city.  (Jaffe Aff. ¶¶ 21-22).  The conference ultimately was rescheduled for January 10, 2013.

Although the Court had accommodated his alleged trial schedule, Mr. Shuman inexplicably was absent on the day of the conference.  After waiting for over thirty minutes for him to arrive, my Chambers staff reached him by telephone, only to learn that he was still in Washington, D.C., where he resides.  Instead of sending Ms. Jaffe home and rescheduling the conference yet again, I permitted Mr. Shuman to participate by telephone.  (ECF No. 121 ("Transcript" or "Tr.") at 2).  Mr. Shuman sought

at first to explain his absence by claiming that he had been under the impression that the conference was to occur the following week.  (Id. at 3).  In response to further inquiries, he then confirmed that he had served as "co-counsel" in the trial that was the basis for his letter requesting an adjournment.  (Id. at 3-5).  Upon further questioning, however, Mr. Shuman modified his story, stating instead that he had not appeared for a trial at all, but, rather, had merely needed to be available by telephone so that he could correspond with his colleague (his brother) who was handling the case.  (Id. at 4-5).  Troubled by Mr. Shuman's obviously untruthful representations, both in his letter requesting an adjournment and at the January 10 conference, I ordered Mr. Shuman to show cause why he should not be sanctioned for intentionally misleading the Court.  (See ECF No. 109).[1] I then turned to the parties' discovery motions.

        With respect to Romeo's motion, I concluded that Assara's responses to Romeo's Requests for Admission were insufficient and directed Assara to provide amended responses.  I further ordered Assara to produce its original operating agreement, as well as documents reflecting the identities of its members.  Turning to the issue of Ms. Tayar's outstanding deposition, I indicated that the Court would issue an arrest warrant based upon her failure to comply with the Court-ordered subpoena if she did not contact Ms. Jaffe by January 16 to schedule the deposition.  I then denied Assara's motion to compel production of Romeo's sales records and its Google Analytics reports.  These

---

[1]     Following a hearing, I determined that sanctions indeed were appropriate and imposed a civil monetary penalty in the amount of $1,000.  (ECF No. 138).  That fine has been paid.  (ECF No. 149).

rulings were incorporated into a Discovery Order dated January 10, 2013.  (ECF No. 108).

On January 24, 2013, Assara filed a motion for reconsideration of my ruling rejecting its request for production of the Google Analytics and other website tracking records.  (ECF No. 116).  Because Ms. Jaffe continued to represent that there were no such documents, I denied the motion, but directed Romeo to certify that it had performed a diligent search that had not unearthed any responsive documents.  (ECF No. 155). Romeo's principal, Christian Karavolas, executed that certification on March 29, 2013. (ECF No. 156).

On January 18, 2013,  Ms. Jaffe filed an affidavit in support of Romeo's application for reimbursement of the attorneys' fees that it claims to have accrued in connection with this dispute.  (Jaffe Aff.).  On February 5, Ms. Jaffe filed a supplemental affidavit, in which she annexed her firm's redacted time records.[2]  (Supp. Aff. of Claudia G. Jaffe, Esq., sworn to on Feb. 5, 2013 ("Jaffe Supp. Aff.") (ECF No. 137)).  Assara filed opposition papers on March 3.  (Def.'s Mem. of Law in Opp. to Pl.'s App. for Atty.'s Fees ("Def.'s Opp. Mem.") (ECF No. 151)).

III.   Legal Standard

"The great operative principle of [Rule 37] is that the loser pays" the expenses incurred in making or opposing a motion to compel.  JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. and Trade Servs. Inc., No. 03 Civ. 5562 (JGK) (AJD),

---

[2]      Ms. Jaffe also supplied the Court with an unredacted copy of the records for in camera review.

2005 WL 1958361, at *14 (S.D.N.Y. Aug. 16, 2005) (quoting 8A Charles Allan Wright,

Arthur R. Miller & Richard L. Marcus, Federal Practice & Procedure:  Civil 2d § 2288, at

657-58).  Accordingly, after granting a motion to compel, the Court "must, after giving an

opportunity to be heard, require the party . . . whose conduct necessitated the motion, the

party or attorney advising that conduct, or both to pay the movant's reasonable expenses

incurred in making the motion, including attorney's fees."  Fed. R. Civ. P. 37(a)(5)(A).  A

moving party, however, is not permitted to recover fees where the moving party failed to

attempt in good faith to obtain the requested discovery before filing the motion, the

opposing party's nondisclosure was "substantially justified, or "other circumstances

[would] make an award of expenses unjust."  Fed. R. Civ. P. 37(a)(5)(A)(i)-(iii).

Similarly, Rule 37(a)(5)(B) requires payment of a nonmovant's reasonable fees

associated with responding to an unsuccessful motion to compel, unless "the motion was

substantially justified or other circumstances make an award of expenses unjust."  Fed. R.

Civ. P. 37(a)(5)(B).  As the Supreme Court has explained, a party is entitled only to the

"costs that [the party] would not have incurred but for" the other party's conduct.  Fox v.

Vice, 131 S. Ct. 2205, 2211 (2011).  Thus, "the dispositive question is . . . whether the

costs would have been incurred in the absence" of the other's conduct.  Id. at 2216.

        "As a concession to the mortality of judges, the law does not require a line-

item review of fee applications."  O'Toole v. Allied Interstate, LLC, No. 12 Civ. 4942

(WHP), 2012 WL 6197086, at *1 (S.D.N.Y. Dec. 12, 2012).  Accordingly, in evaluating

an application for attorneys' fees, district courts "need not, and indeed should not,

become green-eyeshade accountants." <u>Fox</u>, 131 S. Ct. at 2216.  Because "the essential

goal in shifting fees (to either party) is to do rough justice, not to achieve auditing

perfection," the Court is entitled to "substantial deference" in determining the amount of

fees to be awarded.  <u>Id.</u> at 2216.

IV.     <u>Analysis</u>

A.     <u>Preliminary Considerations</u>

Assara's opposition papers raise a laundry list of objections to various

aspects of Romeo's fee application.  Most of these arguments are without merit and can

be dealt with in short order.  First, Assara contends that Romeo's fee application should

be denied in its entirety because of certain alleged "[u]njustifiable, [c]ulpable, and

[i]mproper conduct" on Romeo's part, which would render an award of expenses unjust

under the circumstances.  (Def.'s Mem. at 11).  However, other than complaints that

Romeo has changed the nature of the relief it seeks in this suit – which has nothing to do

with the present discovery dispute – and that Romeo failed to perform a diligent search

for the Google Analytics records – an argument that simply revisits Assara's motion to

reconsider, which I denied – Assara has failed to identify any "culpable" or "improper"

conduct that would warrant disallowing Romeo an award of its reasonable fees.  In the

absence of any showing that an award of fees would be unjust under the circumstances,

Assara's argument must be rejected.

Assara next contends that fees associated with the motion to compel

production of its corporate documents should be disallowed because its failure to disclose

7

them was substantially justified.  (Def.'s Opp. Mem. at 19).  Assara was not substantially

justified; I directed production of those documents back in October, (ECF No. 56), and

Assara has not provided any valid excuse for why they were not disclosed.  Rule 37

"places the burden on the disobedient party to avoid expenses [including attorneys' fees]

by showing that his failure is justified."  <u>JSC Foreign Econ. Ass'n Technostroyexport</u>,

2005 WL 1958361, at *1 (quoting 1970 Advisory Committee Notes to Rule 37(b)).

Assara plainly fails to make that showing here.

      Assara further argues that any fees Romeo incurred in responding to

Assara's motion to compel are not compensable because Assara was substantially

justified in filing its motion.  (<u>Id.</u> at 20).  Here again, however, Assara simply reasserts

the arguments advanced in its motion for reconsideration, which I rejected.  Thus, Assara

has failed to satisfy its burden of demonstrating that its motion was substantially justified.

      Finally, Assara asserts that fees incurred in connection with Romeo's fee

application itself must be excluded because they are not reimbursable as a matter of law.

(<u>Id.</u> at 21).  That argument scarcely merits a response.  It is settled law in this Circuit that

"a prevailing party may recover for hours expended in connection with a fee request."

<u>Brown v. Starrett City Associates</u>, No. 09-CV-3282 (JBW), 2011 WL 5118438, at *6

(E.D.N.Y. Oct. 27, 2011) (citing <u>Weyant v. Okst</u>, 198 F.3d 311, 316 (2d Cir. 1999)).

B.    Attorneys' Fees

        To determine the amount of attorneys' fees to which a prevailing party in a discovery dispute is entitled, the Court must calculate the "presumptively reasonable fee," often referred to as the "lodestar."  Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany and Albany Cnty. Bd. of Elections, 522 F.3d 182, 183 (2d Cir. 2008). That amount is "the rate a paying client would be willing to pay . . . bear[ing] in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively."  Id.; see also Perdue v. Kenny A. ex rel. Winn, 130 S. Ct. 1662, 1672 (2010) ("[A] 'reasonable fee' is a fee sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case.").  The presumptively reasonable fee is calculated by multiplying the reasonable number of hours that the case requires by the reasonable hourly rate.  See Millea v. Metro-North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011).

1.    Reasonable Hourly Rate

        In assessing the reasonableness of an attorney's hourly rate, consideration is given to whether "the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." I.B. v. New York City Dep't of Educ., 336 F.3d 79, 80 (2d Cir. 2003) (quoting Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984)).  The Court may rely on its own knowledge of private firm hourly rates, Miele v. N.Y. State Teamsters Conference Pension & Ret. Fund, 831 F.2d 407, 409 (2d Cir. 1987), and "may adjust the base hourly rate to account for

other case-specific variables." Arbor Hill, 522 F.3d at 184.  These variables include

twelve factors set forth in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th

Cir. 1974), abrogated on other grounds by Blanchard v. Bergeron, 489 U.S. 87, 92-93

(1989):

> (1) the time and labor required; (2) the novelty and difficulty of
> the questions; (3) the skill requisite to perform the legal service
> properly; (4) the preclusion of employment by the attorney due
> to acceptance of the case; (5) the customary fee; (6) whether the
> fee is fixed or contingent; (7) time limitations imposed by the
> client or the circumstances; (8) the amount involved or the results
> obtained; (9) the experience, reputation, and ability of the
> attorneys; (10) the 'undesirability of the case;' (11) the nature
> and length of the professional relationship with the client; and
> (12) awards in similar cases.

Hensley v. Eckerhart, 461 U.S. 424, 430 n.3 (1983) (citing Johnson, 488 F.2d at 717-19);

see also Arbor Hill, 522 F.3d at 186 n.3 (citing the Johnson factors).  The Court need not

"recite and make separate findings as to all twelve Johnson factors."  Lochren v. Cnty. of

Suffolk, 344 Fed. App'x 706, 709 (2d Cir. 2009).

　　　　According to Romeo's time records, one partner, one associate, and one

legal intern/paralegal worked on the discovery matters at issue.  (Jaffe Aff. ¶ 29).  David

K. Fiveson, Esq., a partner who has been practicing law in New York for over thirty years,

billed at a rate of $450 per hour.  (Id.).  Ms. Jaffe, who is an associate and has been

practicing law since 1988, billed at a rate of $300 per hour.  (Id.).  Julie Levine, a second-

year law-student intern who previously worked as a paralegal at a large law firm, billed at

a rate of $75 per hour.  (Id.).

10

These rates clearly are in line with the prevailing market rates for partners and associates in the Southern District of New York.  See Underdog Trucking, L.L.C. v. Verizon Servs. Corp., 276 F.R.D. 105, 109 (S.D.N.Y. 2011) (approving a $550 hourly rate for a partner with over twenty years of experience); Sheehan v. Metro Life Ins. Co., 450 F. Supp. 2d 321, 327-28 (S.D.N.Y. 2006) (approving a $425 hourly rate for a partner with thirty-five years of experience); Imbeault v. Rick's Cabaret Int'l Inc., No. 08 Civ. 5458, 2009 WL 2482134, at *4-5 (S.D.N.Y. Aug. 13, 2009) (approving a $325 hourly rate for an associate with eight years of experience).  Likewise, Ms. Levine's hourly rate matches the prevailing rate for paralegals in this district.  See Moon v. Gab Kwon, No. 99 Civ. 11810 (GEL), 2002 WL 31512816, at *3 (S.D.N.Y. Nov. 8, 2002) (Lynch, J.) ("Like paralegals, law student clerks are compensated at prevailing market rates.  Students are generally billed at rates similar to paralegals.") (citation omitted); Tlacoapa v. Carregal, 386 F. Supp. 2d 362, 370 (S.D.N.Y. 2005) (approving paralegal rate at $75 per hour). Accordingly, the requested hourly rates are reasonable and do not warrant reduction.

    2.    Hours Reasonably Expended

To enable a court to determine whether counsel's time charges are reasonable, a party must submit contemporaneous time records indicating the number of hours expended and the nature of the work done.  See Lewis v. Coughlin, 801 F.2d 570, 577 (2d Cir. 1986); N.Y. State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983); Puglisi v. Underhill Park Taxpayer Ass'n, 964 F. Supp. 811, 817 (S.D.N.Y. 1997).  Ms. Jaffe annexed complete time records to her supplemental affidavit.

(See Jaffe Supp. Aff.).  Those records show that Romeo's timekeepers billed a total of

81.1 hours to prepare their motion to compel and oppose Assara's unsuccessful motion.

(Jaffe Aff. Ex. A).  The lion's share of that time was billed by Ms. Jaffe, who devoted 78.3

hours to the matter.  (Id.).  Mr. Fiveson and Ms. Levine billed 2.3 hours and 0.5 hours,

respectively.  (Id.).

  In evaluating the reasonableness of a fee request, the Court must "examine

the particular hours expended by counsel with a view to the value of the work product of

the specific expenditures to the client's case, and if it concludes that any expenditure of

time was unreasonable, it should exclude these hours from the calculation of the

reasonable fee."  Konits v. Karahalis, 409 Fed. App'x 418, 421 (2d Cir. 2011) (quoting

Luciano v. Olsten Corp., 109 F.3d 111, 116 (2d Cir. 1997)) (internal punctuation and

quotation marks omitted).  It requires only a brief review of the time records in this case to

conclude that the hours for which Romeo is seeking reimbursement are grossly excessive

relative to the nature of the work performed.  Those hours consequently must be excluded

from any fee award.  Hensley v. Eckerhart, 461 U.S. 424, 434 (1983) ("excessive,

redundant, or otherwise unnecessary" work must be excluded from a fee request).

  First, Ms. Jaffe's records reveal numerous inefficiencies and instances of

excessive billing that warrant a significant reduction to her fees overall.  To cite but one of

many examples, the records indicate that nearly fifteen hours were billed for preparation of

the December 12 discovery letter.  Although that letter was lengthy, most of it consisted of

quotes taken verbatim from Romeo's Requests for Admission and Assara's responses.

12

Likewise, Ms. Jaffe's objections to Assara's responses, which were almost entirely boilerplate, were simply copied directly from her November 28 letter and repeated over and over throughout the letter.  This kind of cut-and-paste work, part of which surely could have been assigned to a paralegal, obviously should not have required a great deal of effort or time.  To have spent fifteen hours on the letter is unreasonable.

The relative simplicity of the matters in dispute also augurs in favor of a hefty reduction in Ms. Jaffe's fees.  Indeed, the discovery letters concerned only basic issues, were not substantive, and did not require a great deal of legal research.  (Ms. Jaffe's submissions did not cite a single case.)  It should not reasonably have taken an attorney with twenty-five years' experience, like Ms. Jaffe, anywhere near the more-than-sixty hours that were billed to complete three discovery letters.  Considering the straightforward nature of the discovery issues involved, Ms. Jaffe's claimed fees are egregiously high.

In addition, further reductions are appropriate because many of Ms. Jaffe's billing entries are either vague or "block-billed."  "Though not forbidden, block-billing makes it 'difficult if not impossible for a court to determine the reasonableness of the time spent on each of the individual services or tasks provided.'"  Husain v. Springer, No. 97 CV 2982 (NG) (CLP), 2013 WL 1122718, at *10 (E.D.N.Y. Mar. 15, 2013) (quoting Simmons v. N.Y.C. Dep't of Corr., No. 06 Civ. 5298 (NRB), 2008 WL 4303474, at *8 (S.D.N.Y. Sept. 16, 2008)).  In such cases, an across the board reduction is appropriate. See, e.g., Sea Spray Holdings, Ltd. v. Pali Fin. Group, Inc., 277 F. Supp. 2d 323, 326 (S.D.N.Y. 2003) (reducing fee award by 15% for block billing and excessive time entries).

The records attached to Ms. Jaffe's supplemental affidavit include a great deal of block-billed entries that make evaluating Romeo's fee request quite difficult.  By way of example, on December 17, Ms. Jaffe billed 9 hours for work she described as follows:  "further draft letter to Magistrate Maas in opposition to Shuman's letter of December 12; emails to and from Chris regarding various matters related to response to Shuman's letter; write Shuman regarding Yahoo affidavit."  (Jaffe Supp. Aff. Ex. B). Because it is unclear how much time Ms. Jaffe actually devoted to each of these individual tasks, all of which would have required differing amounts of time and effort, it is impossible to determine whether her time was spent reasonably.

In addition, Ms. Jaffe's block-billing has made it difficult to separate tasks that are compensable from those that are not, or tasks that should have been billed at lower rates from those compensable at ordinary rates.  For example, on January 11, Ms. Jaffe billed 2.1 hours for activities including:  "writ[ing] Mr. Shuman regarding [Ms. Tayar's deposition], email[ing] to and from [Ms. Levine] regarding obtaining transcript[; and beginning] drafting fee application in accordance with Judge Maas' orders from hearing Jan. 10."  Fees stemming from Romeo's request to compel Ms. Tayar to appear for her deposition may not be assessed against Assara because Ms. Tayar is a non-party; although she may be the wife of one of the individual defendants and possibly may have performed work for Assara, Romeo has made no showing either that Assara's actions necessitated that aspect of Romeo's motion or that Assara or its attorneys "advised" Ms. Tayar's conduct.  Fed. R. Civ. P. 37(a)(5)(A).  Due to Ms. Jaffe's practice of block-billing,

14

however, it simply is not possible to separate out and exclude the time billed for tasks related to Ms. Tayar's deposition.

Similarly, on January 10, the day of the discovery conference, Ms. Jaffe billed an aggregate 6.9 hours for tasks including:  "[r]eview documents for appearance before Magistrate Judge Maas on discovery issues; prepare documents for the Court and Mr. Shuman for the conference; travel to and from SDNY to appear at discovery conference with client, Court and Mr. Shuman appearing telephonically."  (Jaffe Supp. Aff. Ex. B).  In keeping with the custom in this District, the time spent traveling to and from the Courthouse should have been billed to Romeo at one-half of Ms. Jaffe's usual rate.  Rhobar, Inc. v. Silver, No. 07 Civ. 6100 (BSJ) (HBP), 2008 WL 5054725, at *2 (S.D.N.Y. Nov. 28, 2008) (citing In re Agent Orange, 818 F.2d 226, 238 (2d Cir. 1987)).  Because Ms. Jaffe fails to indicate how much time was spent on travel, however, there is no way to apply an appropriate reduction.  In these circumstances, the only feasible way of reducing Ms. Jaffe's fees is to apply an overall reduction.

When reducing an overall fee award, a "district court may exercise its discretion and use a percentage reduction 'as a practical means of trimming fat from a fee application.'"  McDonald ex rel. Prendergrast v. Pension Plan of the NYSA-ILA Pension Trust Fund, 450 F.3d 91, 96 (2d Cir. 2006) (quoting Carey, 711 F.2d at 1146).  Considering the numerous hours Ms. Jaffe billed that were either excessive or otherwise unreasonable, a seventy-five percent reduction in her fees is appropriate.  See Days Inn Worldwide, Inc. v. Amar Hotels, Inc., 05 Civ. 10106 (KMW) (KNF), 2008 WL 2485407,

at *10 (S.D.N.Y. June 18, 2008) (reducing fees by 75%); <u>Shim v. Millennium Group</u>, No. 08-CV-4022 (FB) (VVP), 2010 WL 2772493 (E.D.N.Y. June 21, 2010) (reducing fees by two-thirds due to excessive billing); <u>Pennacchio v. Powers</u>, No. 05 CV 985 (RRM) (RML), 2011 WL 2945825 (E.D.N.Y. July 21, 2011) (applying 60% reduction); <u>LaBarbera v. Almar Plumbing & Heating Corp.</u>, No. 07cv1731 (DLI) (JO), 2008 WL 3887601 (E.D.N.Y. Aug. 20, 2008) (reducing hours by 60%); <u>Daiwa Special Asset Corp. v. Desnick</u>, No. 00 Civ. 3856 (SHS), 2002 WL 31767817 (S.D.N.Y. Dec. 3, 2002) (reducing fee award by 50% in part due to excessive billing); <u>Cruceta v. City of New York</u>, No. 10-CV-5059 (FB) (JO), 2012 WL 2885113, at *8 (E.D.N.Y. Feb. 7, 2012) (applying a 50% across-the-board reduction); <u>Trustees of United Teamster Fund v. J.B. Mufflers, Inc.</u>, No. 07 CV 1425 (SJ) (RML), 2008 WL 2114955, at *6 (E.D.N.Y. May 19, 2008) (reducing fees by 50% in order to "trim the extra fat" and account for various deficiencies).  The time expended on the case by Mr. Fiveson and Ms. Levine was minimal and therefore does not warrant reduction.

     D.    <u>Lodestar Calculation</u>

       Applying a seventy-five percent reduction, Ms. Jaffe's hours total 19.575. At her $300 hourly rate, her fees amount to $5,872.50.  Mr. Fiveson spent 2.3 hours on the discovery motion at a rate of $450 per hour.  Therefore, his fees amount to $1,035.  (<u>Id.</u>). Ms. Levine is entitled to $37.50 for the 0.5 hours she expended on the motion.  Romeo is therefore entitled to a total of $6,945.

IV.     Conclusion

For the foregoing reasons, Romeo's fee application (ECF No. 113) is

granted, but the award is reduced to the amount of $6,945.


SO ORDERED.

Dated:        New York, New York
              July 2, 2013

                                        _____
                                        FRANK MAAS
                                        United States Magistrate Judge


Copies to:

Honorable Thomas P. Griesa
United States District Judge

All counsel (via ECF)