UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------ X
                                     :
ROMEO & JULIETTE LASER HAIR REMOVAL, :
INC. d/b/a ROMEO & JULIETTE HAIR     :        08cv0442(DLC)
REMOVAL,                             :
                                     :        OPINION & ORDER
                  Plaintiff,         :
                                     :
        -v-                          :
                                     :
ASSARA I LLC, d/b/a ASSARA LASER     :
CENTER NYC, ASSARA LASER and MANHATTAN :
LASER HAIR REMOVAL, JAY SHUMAN a/k/a :
JEROME SHUMAN, WILL SHUMAN, DR. SAM  :
TAYER, and DAVID TAYER,              :
                                     :
                  Defendants.        :
------------------------------------ X

APPEARANCES

For plaintiff:

David K. Fiveson
Claudia G. Jaffe
BUTLER, FITZGERALD, FIVESON & McCARTHY, P.C.
9 East 45th Street, Ninth Floor
New York, NY 10017

For defendants:

Will Shuman
160 First Avenue, Suite 5B
New York, NY 10009

DENISE COTE, District Judge:

    This lawsuit spans eight years of contentious litigation.

Plaintiff Romeo & Juliette Laser Hair Removal, Inc., d/b/a Romeo

& Juliette Hair Removal ("Romeo & Juliette") brought this

lawsuit against defendants Assara I LLC, d/b/a Assara Laser

Center NYC and Manhattan Laser Hair Removal ("Assara"), Jay
Shuman ("Jay"), Will Shuman ("Shuman"), Dr. Sam Tayar ("Dr.
Tayar"), and David Tayar ("Tayar") on January 17, 2008.  The
parties filed cross-motions for summary judgment in 2015.

On January 14, 2016, this action was transferred to this
Court's docket.  Following a conference with the parties, the
defendants filed a motion to dismiss on the ground that the
litigation is moot.  For the following reasons, the defendants'
motion to dismiss is denied.  The plaintiff's motion for summary
judgment is granted against defendants Assara and Shuman only.
An injunction will be separately issued as to these two
defendants.  The defendants' motion for summary judgment is
granted only as to defendants Jay and Dr. Tayar.

<u>**BACKGROUND**</u>

The following facts are undisputed or taken in the light
most favorable to the defendants.

I.   <u>**The Parties**</u>

Plaintiff Romeo & Juliette is a business offering laser
hair removal services operating in New York City.  The business
is wholly-owned and operated by Christian Karavolas
("Karavolas").  Plaintiff possesses a federal trademark for a

depiction of the words "Romeo & Juliette" in connection with permanent hair removal and reduction services.[1]

Defendant Assara is also a laser hair removal services business.  Defendants Tayar, Shuman, and Dr. Tayar founded Assara, a New York limited liability company, in February 2006.[2]

Tayar was Assara's first President and Chairman.[3]  Tayar founded Assara while employed as a full-time associate at the law firm Paul, Weiss, Rifkind, Wharton & Garrison LLP ("Paul, Weiss").  Tayar worked at Paul, Weiss from at least January 2006 until his departure in late 2012, when he left the law firm to join Assara as its General Counsel.  Tayar eventually disposed of his stake in Assara.[4]

Defendant Shuman, who appears in this case both pro se and as counsel for his co-defendants, was Assara's first CEO and General Counsel.  Shuman also testified that he was Assara's sole manager.  Like Tayar, Shuman was employed as an associate

---

[1] Plaintiff also owns a related trademark.

[2] An Assara operating agreement refers to Tayar, Shuman, and Dr. Tayar as the "Original Founders."

[3] In February 2012, Shuman testified that Tayar was never employed by Assara, and that his sole relationship was that of a member.

[4] The defendants have submitted conflicting statements regarding when Tayar disposed of his stake in Assara.

at Paul, Weiss, working there from 2004 to 2005, and from 2006 to 2007.

Dr. Tayar, the first CFO and Secretary of Assara, is Tayar's father and resides in Canada.  By late 2006, his only role in Assara was as an inactive investor.

Jay is Shuman's brother.  While there is some evidence that Jay was working on behalf of Assara as early as 2006, Shuman asserts that Jay began his employment with Assara on March 3, 2010.[5]

## II.  **The Defendants' Online Posts Concerning Plaintiff**

Beginning in early 2006, a series of negative comments about the plaintiff's business appeared on the internet consumer forums HairTell.com ("HairTell"), Yelp.com ("Yelp"), CitySearch.com ("City Search"), and consumerbeware.com ("Consumer Beware").  The posts came from anonymous users who claimed to have used the plaintiff's laser hair removal services.  Among those responsible for these negative posts were Shuman, Tayar, and Assara employees.  A description of some of the negative posts as well as the evidence linking those posts to these three defendants, drawn from the evidence submitted by

---

[5] A document reflecting the creation on October 31, 2006 of an "AssaraLaser" user account on HairTell.com lists an email address held by Jay Shuman.

the parties in connection with the plaintiff's 2015 motion for summary judgment, follows.

**A. Assara**

From March 2006 to August 2011, Assara leased the second floor of 7 West 51st Street in New York City from Dr. Keith Berkowitz.  Dr. Berkowitz provided internet service for his own business and for his lessees through his Verizon Internet Services, Inc. ("Verizon") account.  One Internet Protocol ("IP") address on that account belonged to Assara.[6]  The defendants do not dispute that the Assara IP Address was associated with a computer terminal located at Assara's place of business.

Assara employees posted a number of negative comments about the plaintiff on internet sites from the Assara IP Address. Mark Bakkar, who was employed as an Assara office manager from January to December 2008, posted at least eight comments on HairTell in September 2008 posing as a "27 year old female" with

---

[6] "An IP address is a string of four sets of numbers, separated by periods, such as '98.37.241.30,'" that "every host or computer on the Internet is assigned." Name.Space, Inc. v. Network Sols., Inc., 202 F.3d 573, 576 (2d Cir. 2000).  An IP address is a "unique identification of the location of an end-user's computer" on a given Internet network, and thus "serves as a routing address for email and other data sent to that computer over the Internet from other end-users." Register.com, Inc. v. Verio, Inc., 356 F.3d 393, 407 n.4 (2d Cir. 2004).  The IP address for Assara's computer ended in 210 and will be referred to as the "Assara IP Address."

"light complexion" and "black hair."  Four of these posts
contain negative statements about the plaintiff's business and
one promotes Assara's services.  For example, in response to
another HairTell user's recommendation of Romeo & Juliette,
Bakkar asked if there were hair removal services other than the
plaintiff because he had heard "a horror story" about Romeo &
Juliette.  When pressed for more details, Bakkar wrote that he
had heard from a former Romeo & Juliette technician that the
plaintiff had over-applied EMLA cream to a client, who then
"suffered a heart attack" and came "very close" to dying.  The
plaintiff denies that such an incident occurred.  The defendants
have offered no evidence of such an incident or that Bakkar had
heard that it occurred.

Working from the Assara IP Address, Assara employees also
created additional usernames on Yelp and HairTell to post
negative statements about the plaintiff's services.  The
accounts were registered under the usernames "Sammy C.,"[7]

---

[7] On September 18, 2008, someone acted from the Assara IP Address
to register the Yahoo email account sammychaud@yahoo.com and the
Yelp username "Sammy C."  Using that email address, name, and IP
Address, the person at Assara posted a negative review of the
plaintiff.

"Victoria G.,"[8] and "Hana H."[9]  Examples of negative reviews of
the plaintiff include a September 18 post describing the
plaintiff's owner as "very into himself" and its staff as
unprofessional.  A September 25 post described the plaintiff's
service as expensive and its employees as "a tad rude."  And
several October 2008 reviews described a recent patch test
performed by the plaintiff that "burned" skin.  Karavolas denies
that this burning incident occurred, and testified that none of
the technicians employed at Romeo & Juliette since 2006 caused
any injuries.

Someone associated with Assara also posted negative reviews
about the plaintiff's services from a second IP address.[10]  Using
this second address, the person posted on internet web forums
under the usernames "AssaraNY" and "JoeKala" in late March and
early April 2006.  As JoeKala, the person stated that Romeo &

---

[8] On September 25, 2008, someone acted from the Assara IP Address
to register the username "Victoria G." and post a negative
review of the plaintiff on Yelp using the email address
gamblevictoria@rocketmail.com.

[9] On October 16, 2008, someone working from the Assara IP Address
used the name "Hana Husn" to register the email address
hanahusn@yahoo.com with Yahoo and, later that day, also
registered the user "HanaH" on HairTell using the same email
address.  Later that month, using the Assara IP Address, someone
then posted under the "HanaH" username negative comments about
the plaintiff on HairTell, as well as two negative reviews of
the plaintiff on Yelp under the username "Hana H."

[10] The last three digits of this IP address were 7.62.

Juliette was "the most unprofessional place" and that one of the plaintiff's employees was "passive and sleazy."  JoeKala contrasted the plaintiff's business with the "amazing" service at Assara.

**B. Shuman**

Using the name AileyRokks on City Search, Shuman posted a negative review of Romeo & Juliette on June 17, 2009 while posing as a male dancer.  The post states that while Assara "really understood" his needs as a dancer, he "lasered once at Romeo & Juliette but had to cancel my treatment plan because my skin had a reaction."

The AileyRokks post came from the same IP address that Shuman used to post a statement under the username "AssaraGenCounsel" on HairTell.[11]  AssaraGenCounsel was registered using Shuman's email address, shuman.will@assaralaser.com.  On October 20, 2008, Shuman used the AssaraGenCounsel username to post an "open letter" on HairTell warning the plaintiff's owner to cease and desist making defamatory statements about Assara.  Shuman ended this post with his name and title as General Counsel.[12]

---

[11] This IP address, ending in 212, will be referred to as the "212 IP Address."

[12] In his 2012 deposition, Shuman testified that he could not recall whether he had written the October 20 post, but added that "maybe I did write it.  I don't know."  The defendants'

**C. Tayar**

Between 2006 and 2009, Tayar wrote posts about the plaintiff under three different usernames.  These names were "trex7740,"[13] "Lisa2500,"[14] and "Karine B."[15]

As trex7740, Tayar wrote that "criticisms" of Romeo & Juliette had been "blown out of proportion": "Assara Laser is a good place, but so is Romeo.  And though there have been

_____

Local Rule 56.1 Statement is less ambivalent.  It does not dispute that the HairTell statements by AssaraGenCounsel were posted by "Assara, by its principles or its employees."  Moreover, the 56.1 Statement does not deny that the email address used to register the HairTell account "AssaraGenCounsel" was issued to Shuman, nor does it dispute that Shuman's email address was used to register that account on October 29, 2008 from the 212 IP Address.

[13] On February 24, 2006, Tayar used his personal Hotmail email address to create the username "trex7740" on HairTell. Tayar created this account from an IP address associated with his then employer, Paul, Weiss.  This IP address, ending in 3.25, will be referred to as the "Paul, Weiss IP Address."

[14] Tayar used two IP addresses to post comments using the name "Lisa2500."  He used his Paul, Weiss IP Address to post a comment as Lisa2500 on April 5, 2006.  On that same day, he used another IP Address (ending in 237) to post comments on Consumer Beware under the username AssaraNY.  Tayar had used the 237 IP address to post a Consumer Beware statement about the plaintiff on April 2, 2006 as Lisa2500.

[15] On October 28, 2009, an Assara email account assigned to Tayar's wife, Maxine, were used to create the username Karine B. on Yelp.  She was an occasional unpaid blog writer for Assara's website.  The negative post on Yelp concerning the plaintiff and using the name Karine B. came from an IP address at the Tayars' home.  The last three digits of this IP address were 162. Maxine Tayar has neither confirmed nor denied creating the Karine B. post.

complaints about the high turnover of staff, I've been there and they [have] machines which are as good as those found at Assara Laser." As trex7740, Tayar also engaged in an online dialogue with someone associated with Assara writing under the pseudonym JoeKala.[16] Trex7740 described the plaintiff as "not that bad" while noting the plaintiff's "staff turnover" and long waiting time. In response to another user, "lagirl," who claimed to know that JoeKala was an employee of Assara, Tayar wrote that "it would be great to know who all these people are. [S]ome say in other forums that LAGirl is Romeo's girlfriend, but who knows." Despite earlier denials, defendants now admit that Tayar created the username "trex7749" and used it from March 30 to April 8, 2006 to post eight statements on HairTell.

A post by Lisa2500 noted that the plaintiff's staff had a "negative attitude" although it also characterized Romeo & Juliette as a "decent place." A review by Karine B. on Yelp criticized the plaintiff for "charg[ing] more for the same thing" and employing a "woman" who "asked some personal questions in a rude manner."[17] Karine B. concluded that she

---

[16] As noted above, someone at Assara created the username JoeKala and used it anonymously to attack the plaintiff's professionalism and to promote Assara.

[17] Maxine Tayar testified that when she went to Romeo & Juliette, its male owner, Karavolas, "asked to see the area that I wanted to get lasered," which made her "uncomfortable."

would "stay put at my laser place, where it's clean and they're courteous."  In a 2013 Local Rule 56.1 Statement submitted in opposition to plaintiff's 2012 summary judgment motion, defendants did not dispute that Assara used the "Karine B." username to post a review of Romeo & Juliette on Yelp.

In a 2013 declaration, Tayar reports that he went to Romeo & Juliette on three occasions at some point between 2003 and 2005.  According to Tayar, the laser hair removal treatments he received were effective, but he had to wait for over an hour for each treatment and the technician who treated him was rude and curt.  Despite the negative experience, Tayar reports that Assara hired that same technician, but later let her go when her attitude did not improve.

### D. Other Defendants

On October 31, 2006, Jay registered the username "AssaraLaser" on HairTell using his email address, jay@assaralaser.com.  No negative statements about the plaintiff are associated with the username "AssaraLaser."  Similarly, there is no evidence linking Dr. Tayar to internet comments about the plaintiff.

### III. <u>Prior Proceedings</u>

On January 17, 2008, the plaintiff filed a complaint against the defendants asserting five causes of action for trademark infringement and unfair competition.  The case was

assigned to the Hon. Thomas P. Grisea.  The complaint included

assertions that (1) the defendants had purchased the search

phrase "Romeo & Juliette" from Google Inc. so that whenever the

public searched for "Romeo & Juliette," a sponsored link to the

Assara website would appear; and (2) the defendants had used the

plaintiff's name and marks in hidden links and texts on its

website to deceive the public into believing the plaintiff had

sponsored the defendants' services.  The plaintiff is no longer

pursuing these theories.

On April 1, 2009, the plaintiff filed its First Amended

Complaint ("FAC") to add federal claims for unfair competition,

and state law claims for defamation, unfair competition, and

disparagement arising from the internet comments described

above.  During a conference before Magistrate Judge Frank Maas

on January 10, 2013, the plaintiff abandoned any claim for

monetary damages and sought to recover attorneys' fees and costs

only.[18]

On December 20, 2012, the plaintiff filed a motion for

summary judgment on three counts of the FAC, seeking injunctive

relief and an award of costs and attorneys' fees.  On February

---

[18] At this same conference, Judge Maas discovered that Shuman had
repeatedly made false representations regarding his availability
to appear at the conference.  On February 5, Judge Maas imposed
a $1,000 civil monetary penalty on Shuman pursuant to Fed. R.
Civ. P. 11.  Romeo & Juliette Laser Hair Removal, Inc. v. Assara
I, LLC, 924 F. Supp. 2d 505 (S.D.N.Y. 2013).

12, 2013, the defendants filed an opposition to the plaintiff's summary judgment motion, as well as a motion to dismiss the FAC for lack of subject matter jurisdiction. After a September 18, 2013 oral argument on these motions, Judge Grisea granted the defendants' motion to dismiss and denied the plaintiff's summary judgment motion. But, Judge Grisea also granted the plaintiff leave to amend its FAC to reflect its claim for injunctive relief.

The plaintiff filed its Second Amended Complaint ("SAC") on October 1, 2013, with the following eleven counts, which include various claims for damages, injunctive relief, and attorneys' fees: (1) use of a false designation of origin or false and misleading representation of fact in violation of 15 U.S.C. § 1125(a)(l); (2) dilution of a famous mark in violation of 15 U.S.C. § 1125(c); (3) engaging in unfair business practices in violation of New York General Business Law § 349; (4) trademark infringement in violation of New York common law; (5) unfair competition in violation of 15 U.S.C. § 1125(a); (6) common law defamation; (7) unfair competition under New York State law; (8) common law disparagement; (9) injunctive relief under the Lanham Act, 15 U.S.C. §§ 1116 and 1125; (10) making false and misleading statements about the plaintiff's business in violation of New York General Business Law § 349; and (11) injunctive relief under New York common law. On September 23,

2014, Judge Grisea dismissed Counts Three, Ten, and Eleven of
the SAC.  Romeo & Juliette Laser Hair Removal v. Assara I LLC,
No. 08cv442, 2014 WL 4723299, at *9 (S.D.N.Y. Sept. 23, 2014).
On February 10, 2015, Judge Grisea granted the plaintiff leave
to file a new motion for summary judgment.  Romeo & Juliette
Laser Hair Removal v. Assara I LLC, No. 08cv442, 2015 WL 556742,
at *2 (S.D.N.Y. Feb. 10, 2015).

    In compliance with the February 10 Order, on April 6,
plaintiff filed a motion for summary judgment seeking (1) a
judgment of liability on Counts Five, Six, Seven, and Eight; (2)
an entry of a permanent injunction pursuant to Count Nine; and
(3) an award of costs and attorneys' fees pursuant to 15 U.S.C.
§ 1117(a) and 15 U.S.C. § 1125.  This motion became fully
submitted on June 22.  In response, the defendants filed a
cross-motion for summary judgment on June 8 which became fully
submitted on June 30.[19]  This Opinion addresses both of these
2015 motions for summary judgment.

    On January 14, 2016, this case was reassigned to this
Court.  On January 25, the Court held a conference with all
parties, during which the plaintiff formally abandoned the
trademark allegations underlying Counts One, Two, and Four of

---

[19] Defendants also filed a motion for sanctions on September 14,
2015 which became fully submitted on October 4.  This motion is
not addressed in this Opinion.

the SAC and represented that it is only seeking injunctive relief and legal fees.  Defendant Will Shuman, appearing pro se and on behalf of the other defendants, informed the Court that Assara was no longer in business.  Accordingly, on January 27, the defendants were granted leave to file a two-page letter on the issue of mootness.  The Court also required the plaintiff to serve a proposed injunction on the defendants by January 27, the defendants to advise the plaintiff of any objections to the terms of the injunction by January 29, and the parties to file submissions regarding the terms of the injunction on February 1.

Responding to the plaintiff's request on January 27 to supplement their request for attorneys' fees, the Court also set a briefing schedule on the issue of attorneys' fees.  The plaintiff's motion for attorneys' fees will be fully submitted on March 4.

On January 29, defendants sought leave to file a motion pursuant to Fed. R. Civ. P. 12(b)(1) dismissing this action for lack of subject matter jurisdiction on the grounds of mootness. With permission, defendants filed this new motion to dismiss on February 9, which became fully submitted on February 19.  In support of their motion to dismiss, the defendants have submitted a two page "Covenant Not to Compete and Covenant Not to Disparage Agreement" (the "Covenant").  With this Covenant, the defendants have submitted four separate signature pages from

each of the defendants Tayar, Shuman, Jay, and Dr. Tayar.  The
four signature pages each contain illegible signatures and are
dated either February 9, 2015 or February 9, 2016.  None of the
signatures are notarized.  The Covenant provides that the
signatories "shall not, for a period of 10 years, compete in the
business and industry of laser hair removal . . . and . . .
shall not publish, in any commercial context, any statements
online regarding the quality or characteristics of the business
or services of" the plaintiff.

## DISCUSSION

Summary judgment may not be granted unless all of the
submissions taken together "show[ ] that there is no genuine
dispute as to any material fact and the movant is entitled to
judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "Summary
judgment is appropriate where the record taken as a whole could
not lead a rational trier of fact to find for the non-moving
party."  Smith v. Cty. of Suffolk, 776 F.3d 114, 121 (2d Cir.
2015) (citation omitted).  The moving party bears the burden of
demonstrating the absence of a material factual question, and in
making this determination, the court must view all facts in the
light most favorable to the non-moving party.  Gemmink v. Jay
Peak Inc., 807 F.3d. 46, 48 (2d Cir. 2015); Noll v. Int'l Bus.
Machines Corp., 787 F.3d 89, 97 n.6 (2d Cir. 2015).  "Although
the nonmoving party is entitled to have inferences drawn in his

favor at summary judgment, such inferences must be supported by record evidence." Noll, 787 F.3d at 97 n.6.

Once the moving party has asserted facts showing that the non-movant's claims or affirmative defenses cannot be sustained, "the party opposing summary judgment may not merely rest on the allegations or denials of his pleading; rather his response, by affidavits or otherwise as provided in the Rule, must set forth specific facts demonstrating that there is a genuine issue for trial." Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009) (citation omitted); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). "[C]onclusory statements, conjecture, and inadmissible evidence are insufficient to defeat summary judgment," Ridinger v. Dow Jones & Co. Inc., 651 F.3d 309, 317 (2d Cir. 2011) (citation omitted), as is "mere speculation or conjecture as to the true nature of the facts." Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (citation omitted). Only disputes over material facts -- "facts that might affect the outcome of the suit under the governing law" -- will properly preclude the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

## I.   Counts Five and Seven: Unfair Competition

The plaintiff seeks summary judgment on Counts Five and Seven of its SAC, which bring claims for unfair competition under 15 U.S.C. § 1125(a) and New York law.  While the plaintiff

has established liability under these two counts as to defendants Assara and Shuman, it has failed to do so for defendants Tayar, Jay, or Dr. Tayar.

### A. Count Five: Unfair Competition under 15 U.S.C. § 1125(a)

The Lanham Act "protect[s] persons engaged in . . . commerce against unfair competition." POM Wonderful LLC v. Coca-Cola Co., 134 S. Ct. 2228, 2233 (2014) (citation omitted). Under 15 U.S.C. § 1125(a)(1):[20]

> Any person who, on or in connection with any goods or services, . . . uses in commerce any . . . false or misleading description of fact, or false or misleading representation of fact, which . . . in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of . . . another person's goods, services, or commercial activities shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

While the Lanham Act "does not prohibit false statements generally," it prohibits "false or misleading descriptions or false or misleading representations of fact made about one's own or another's goods or services." S.C. Johnson & Son, Inc. v. Clorox Co., 241 F.3d 232, 238 (2d Cir. 2001) (citation omitted).

---

[20] The plaintiff has abandoned its separate claimed violations of the Lanham Act and New York law associated with alleged schemes by the defendants to manipulate consumers with Google searches and hidden links involving the "Romeo & Juliette" trademark. Section 1125(a) "creates two distinct bases of liability: false association, § 1125(a)(1)(A), and false advertising, § 1125(a)(1)(B)." Lexmark Int'l, Inc. v. Static Control Components, Inc., 134 S. Ct. 1377, 1384 (2014). Count Five is analyzed as a § 1125(a)(1)(B) claim.

To be actionable under the Lanham Act, comments on internet forums must constitute commercial advertising or promotion.

> In this circuit, to constitute commercial advertising or promotion under the Lanham Act, a statement must be: (1) commercial speech, (2) made for the purpose of influencing consumers to buy defendant's goods or services, and (3) although representations less formal than those made as part of a classic advertising campaign may suffice, they must be disseminated sufficiently to the relevant purchasing public.

Gmurzynska v. Hutton, 355 F.3d 206, 210 (2d Cir. 2004) (citation omitted).  Core commercial speech is "speech which does no more than propose a commercial transaction."  Connecticut Bar Ass'n v. United States, 620 F.3d 81, 93 (2d Cir. 2010) (citation omitted).  Put another way, commercial speech is "expression solely related to the economic interests of the speaker and its audience."  United States v. Caronia, 703 F.3d 149, 163 (2d Cir. 2012).

The defendants' anonymous comments recited above constitute commercial advertising or promotion.  In pursuit of their commercial interests, the defendants repeatedly posted disparaging comments to public fora used by consumers to select laser hair removal services.  By anonymously disparaging the plaintiff's business and simultaneously promoting Assara, the defendants acted in pursuit of their economic interests.

To establish a Lanham Act claim, the plaintiff must prove the following four elements.  "[T]he plaintiff must first

demonstrate that the statement in the challenged advertisement is false." Merck Eprova AG v. Gnosis S.p.A., 760 F.3d 247, 255 (2d Cir. 2014) (citation omitted). Falsity may be proven by showing that "(1) the advertising is literally false as a factual matter, or (2) although the advertisement is literally true, it is likely to deceive or confuse customers." Id. (citation omitted). Second, the plaintiff must establish "that the defendants misrepresented an inherent quality or characteristic of the product." Id. (citation omitted). Third, the plaintiff must show that "the defendant placed the false or misleading statement in interstate commerce." Id. (citation omitted). Finally, the plaintiff must show that it has been "injured as a result of the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its products." Id. (citation omitted). Where the statement is literally false, "the court may enjoin the use of the claim without reference to the advertisement's impact on the buying public." Id. at 256 (citation omitted).

The plaintiff has shown that defendant Assara, which acted through its employees and officers, as well as defendant Shuman, made false statements about the plaintiff's business by describing experiences that had not occurred. The statements by Assara and Shuman were literally false as a factual matter since they described persons who were not Romeo & Juliette customers

and experiences with the plaintiff's services that those fictitious customers did not have.  In one instance, an Assara employee used his online identity to report a horror story he had purportedly heard.  The plaintiff has denied that the episode ever occurred, and the defendants have not offered evidence that it did occur or that the author of the post had in fact heard anyone describe such an incident.  Most of these posts concerned essential characteristics of the plaintiff's business, for instance, physical reactions to its treatments or rudeness by its staff.  There is no dispute that posting to internet fora placed the statements in interstate commerce, and that the plaintiff's business was conducted in interstate commerce.  Because the statements were literally false, the plaintiff is relieved of the burden of showing the impact of the statements on its business fortunes.  Accordingly, each element of a § 1125(a) violation is established as to defendants Assara and Shuman.

The plaintiff's motion for summary judgment is denied as to Tayar.  It is undisputed that Tayar received treatments at Romeo & Juliette.  His postings under his three pseudonyms principally repeat that service was slow or that the plaintiff's employees were rude.[21]  These are largely matters of opinion and the

---

[21] Nor is summary judgment warranted on Tayar's more personal comment about Karavolas.

plaintiff has not shown that they are actionable as false statements of fact.  Cf. Groden v. Random House, Inc., 61 F.3d 1045, 1051-52 (2d Cir. 1995) ("[S]tatements of opinion are generally not the basis for Lanham Act liability.").

The plaintiff has provided no evidence that Dr. Tayar or Jay made any statement about Romeo & Juliette.  The plaintiff has thus failed to establish a Lanham Act claim of unfair competition against Tayar, Dr. Tayar, or Jay.

**B. Count Seven:  Unfair Competition Under New York Law**

The plaintiff also moves for summary judgment on its common law unfair competition claim.  New York courts recognize an "incalculable variety of illegal practices falling within the unfair competition rubric, calling it a broad and flexible doctrine that depends more upon the facts set forth than in most causes of action."  Roy Exp. Co. Establishment of Vaduz, Liechtenstein v. Columbia Broad. Sys., Inc., 672 F.2d 1095, 1105 (2d Cir. 1982) (citation omitted).  The doctrine has been described as encompassing "any form of commercial immorality, or simply as endeavoring to reap where (one) has not sown."  Id. (citation omitted).  As such, "[t]he tort is adaptable and capacious."  Id.  Under New York law, unfair competition claims "closely resemble Lanham Act claims except insofar as the state law claim may require an additional element of bad faith or

intent." Nadel v. Play-By-Play Toys & Novelties, Inc., 208 F.3d 368, 383 (2d Cir. 2000) (citation omitted).

The plaintiff has established bad faith by showing that defendants Assara and Shuman deliberately posted false statements critical of the plaintiff's services. Accordingly, the plaintiff has established an unfair competition claim under New York law against these two defendants.

## II.  Count Six: Defamation

The plaintiff next seeks summary judgment on its claim of defamation contained in Count Six. Under New York law, a defamation action requires a plaintiff to show: "(1) a written defamatory factual statement concerning the plaintiff; (2) publication to a third party; (3) fault; (4) falsity of the defamatory statement; and (5) special damages or per se actionability." Chau v. Lewis, 771 F.3d 118, 126–27 (2d Cir. 2014). "A plaintiff in a libel action must identify a plausible defamatory meaning of the challenged statement . . . . If the statement is susceptible of only one meaning the court must determine, as a matter of law, whether that one meaning is defamatory." Celle v. Filipino Reporters Enters., Inc., 209 F.3d 163, 178 (2d Cir. 2000) (citation omitted) (applying New York law).

To meet the first element, the alleged defamatory statement must be "a false statement which tends to expose the plaintiff

to public contempt, ridicule, aversion or disgrace, or induce an evil opinion of him in the minds of right-thinking persons, and to deprive him of their friendly intercourse in society." Franklin v. Daily Holdings, Inc., 21 N.Y.S.3d 6, 10 (1st Dep't 2015) (citation omitted).  To be actionable, "the statement must do more than cause discomfort or affront; the statement is measured not by the sensitivities of the maligned, but the critique of reasonable minds that would think the speech attributes odious or despicable characterizations to its subject."  Chau, 771 F.3d at 127.  While the bare accusation that a product does not conform to its advertised quality does not, without more, defame the owner of the product, disparaging the integrity and professionalism of the competitor's business is actionable.  Ruder & Finn Inc. v. Seaboard Sur. Co., 52 N.Y.2d 663, 670-71 (1981).

To show fault, the plaintiff, which is considered a limited-purpose public figure, must also demonstrate that the defendants published their statements with "actual malice." Biro v. Conde Nast, 807 F.3d 541, 544 (2d Cir. 2015) (applying New York law).  Actual malice is "knowledge that the statements were false or with reckless disregard as to their falsity."  Id.

Since the plaintiff only alleges per se defamation, it is not required to show the existence of special damages.  When statements "fall within established categories of per se

24

defamation, the law presumes that damages will result, and they need not be alleged or proven." Zherka v. Amicone, 634 F.3d 642, 645 (2d Cir. 2011) (citation omitted) (applying New York law). Under New York law, per se defamation includes statements "that tend to injure another in his or her trade, business or profession." Id. at 645 n.6 (citation omitted); see also Allen v. CH Energy Grp., Inc., 872 N.Y.S.2d 237, 238 (3d Dep't 2009). The statements must be "of a kind [that are] incompatible with the proper conduct of the business, trade, profession or office itself." Liberman v. Gelstein, 80 N.Y.2d 429, 436 (1992).

    As already explained in connection with the unfair competition claims, the plaintiff has shown that defendants Assara and Shuman posted critical false reviews of its business on consumer-review websites. It has presented undisputed evidence that satisfies all five elements of its defamation claim. The two defendants made disparaging statements about Romeo & Juliette staff, including claims that they were unprofessional, intrusive, and dishonest. Shuman and Assara went as far as to accuse the plaintiff of causing physical injuries. Statements by each of the defendants "impute[] incompetence, incapacity or unfitness" to Romeo and Juliette and its business services. Allen, 872 N.Y.S.2d at 238 (citation omitted). Accordingly, the plaintiff has established its per se defamation claims against defendants Assara and Shuman. Because

the defendants created fictitious experiences to undermine Romeo & Juliette's business, the plaintiff has shown that the statements were made with actual malice.

The defendants argue that the internet comments in question are statements of opinion. "[E]xpressions of opinion, as opposed to assertions of fact, are deemed privileged and, no matter how offensive, cannot be the subject of an action for defamation." Davis v. Boeheim, 24 N.Y.3d 262, 269 (2014) (citation omitted). To determine whether a statement is an expression of an opinion or one of objective fact, a court must consider:

> (1) whether the specific language in issue has a precise meaning which is readily understood; (2) whether the statements are capable of being proven true or false; and (3) whether either the full context of the communication in which the statement appears or the broader social context and surrounding circumstances are such as to signal readers or listeners that what is being read or heard is likely to be opinion, not fact.

Id. at 270 (citation omitted).

Here, the statements describe fictitious treatments at Romeo & Juliette by fictitious clients. They are therefore readily capable of being proven false. As such, the statements at issue are objective facts, not opinions.

## III. Count 8: Disparagement

The fourth and last claim on which the plaintiff seeks summary judgment is its product disparagement claim in Count

Eight.  "To recover for disparagement of goods, the plaintiff must show that the defendant published a[ ] . . . defamatory statement directed at the quality of a business's goods and must prove that the statements caused special damages."  Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc., 314 F.3d 48, 59 (2d Cir. 2002) (citation omitted) (applying New York law).  Special damages are "the loss of something having economic or pecuniary value."  Albert v. Loksen, 239 F.3d 256, 271 (2d Cir. 2001) (citation omitted) (applying New York law in defamation action).  "Where loss of customers constitutes the alleged special damages, the individuals who ceased to be customers, or who refused to purchase, must be named and the exact damages itemized."  Fashion Boutique of Short Hills, Inc., 314 F.3d at 59 (citation omitted).  If the statements "impeach[] the integrity or business methods of the [entity] itself," however, "no special damages need be shown as the direct accusation constitutes a libel per se."  Drug Research Corp. v. Curits Pub. Co., 7 N.Y.2d 435, 440 (1960) (citation omitted).  As with a defamation claim, a plaintiff must establish that the defendant's statements were made with actual malice.  Ruder & Finn Inc., 52 N.Y.2d at 671.

　　　As described above, the plaintiff has proven that defendants Assara and Shuman published defamatory statements impeaching the integrity of Romeo & Juliette's business.  As

such, the plaintiff need not prove special damages in order to prevail on its disparagement claim.  Accordingly, it has shown that it is entitled to judgment on this claim as well.

## IV.  Injunctive Relief Under the Lanham Act

The plaintiff seeks a permanent injunction under 15 U.S.C. § 1116 "enjoining defendants from publishing defamatory and/or false statements concerning plaintiff and/or its principal." The Lanham Act grants district courts the "power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable."  15 U.S.C. § 1116(a). To obtain a permanent injunction, the plaintiff must demonstrate:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

U.S.S.E.C. v. Citigroup Glob. Markets, Inc., 752 F.3d 285, 296 (2d Cir. 2014) (citation omitted).

The plaintiff is entitled to a permanent injunction against defendants Assara and Shuman.  First, the plaintiff has established that these defendants violated § 1125(a) of the Lanham Act.  They posted comments on the internet between 2006 and 2009 that disparaged the plaintiff's business in an effort to benefit Assara's business through unfair and deceptive means.

Shuman was a principal and founding member of Assara, had a direct stake in its fortunes, and had a willingness to use deceit to shape the market in which it functioned.  Because comments posted on the internet will have a lasting impact on a business's reputation, and because that impact will be impossible to measure, monetary damages are inadequate to compensate the plaintiff for the unlawful activities of the three defendants.[22]  The defendants have identified no hardship that they will experience from the issuance of an injunction, and indeed, in the face of the imminent decision on this request for an injunction, recently pledged through the Covenant that they would not further disparage the plaintiff's business.  The plaintiff's business continues, and its continuing concern with its reputation in the community is strong.  With an injunction, the plaintiff will have greater peace of mind and its investment in its business will be better protected.  There is a strong public interest in fair competition and the accurate description of business services to members of the public.

---

[22] The defendants argue that the plaintiff experienced little harm from their internet postings, as evidenced by a September 2008 request by Karavolas to HairTell to leave the posts up. The email correspondence cited by the defendants, however, is actually part of an extended correspondence between Karavolas and a HairTell employee.  In his emails, Karavolas requested that HairTell keep the defendants' statements up so that he could "do some more work" to determine the identities of the posters.

This injunction is warranted even though the internet postings on which it is premised end with statements made in 2009.  Because the defendants denied for many years that they were responsible for the negative reviews of the plaintiff posted on the internet, the plaintiff was forced to engage in third party discovery to track down the source of the postings. This was an expensive and time-consuming task.  Fact discovery, and thus the plaintiff's ability to obtain this evidence, ended years ago.  Only when it came time to respond to the plaintiff's 2012 motion for summary judgment did the defendants change their litigation posture and begin to acknowledge their authorship of at least some of the defamatory statements.  Because of the defendants' litigation strategy and the elongated nature of this litigation, there is no reliable inference to be drawn as to when the defendants altogether ceased the improper activities at issue here or the likelihood of their recurrence.  In the context of the unique situation here, this gap in time does not present an insurmountable obstacle to imposition of an injunction.

The defendants have recently argued that there is no need for an injunction since Assara went out of business in 2015 and both Tayar and Shulman signed the Covenant promising that they "shall not publish, in any commercial context, any statements online regarding the quality or characteristics of the business

or services of" the plaintiff.[23]  These events do not eliminate the need for this injunction.  This has been lengthy and hard fought litigation.  Without the issuance of an injunction, reinforced by the contempt powers associated with an injunction, there will be inadequate protection against the recurrence of the defendants' sharp business practices and the need for renewed litigation.

In any event, the plaintiff has offered evidence that casts doubt on the representation that Assara has ceased its operations.  Assara is still registered as an active entity with the New York Department of State, and Assara's website is still live.  Moreover, there is no impediment to Shuman opening another laser hair removal business, named Assara or something else.

Accordingly, an injunction shall issue against defendants Assara and Shuman enjoining each of them from publishing false statements about the plaintiff on internet forums.  The specific terms of the injunction will be addressed in a separate order.

---

[23] The Shuman and Tayar's signature pages of the Covenant are dated February 9, 2015, but it appears both were actually signed in 2016.

## V.   **The Defendants' Arguments**

### A. **Defendants' Response to Plaintiff's Evidence**

In the face of the evidence gathered from third parties linking Assara and Shuman to anonymous false and misleading comments posted to internet fora, the defendants presented virtually no evidence of their own.  The defendants' "Rule 56.1(a) Counterstatement of Material Facts" offered few citations to admissible evidence other than to exhibits offered by the plaintiff in support the plaintiff's motion for summary judgment and to documents submitted earlier in the litigation in connection with other motion practice.  The Court has located and considered each of the documents cited by the defendants. The limited evidence cited by the defendants does not create a genuine issue of material fact that would preclude summary judgment.

With limited exceptions, to oppose the plaintiff's IP address evidence, the defendants relied on Shuman's 2012 deposition testimony in which he stated that Assara's computers and therefore its IP address were available to other businesses on Assara's floor, and to Assara's clients and guests.  Since that time, however, both Tayar and Shuman have admitted that they or Assara employees were responsible for at least some of

the posts.[24]  Moreover, Shuman's speculation in his deposition
that Assara clients may have used Assara's computer to create
the posts does not create a genuine dispute as to the
defendants' role in posting these internet comments.  Shuman's
speculation, "unsupported by documentary or other concrete
evidence . . . , is simply not enough to create a genuine issue
of fact in light of the evidence to the contrary."  Argus Inc.
v. Eastman Kodak Co., 801 F.2d 38, 45 (2d Cir. 1986).

    During his 2012 deposition, Shuman also offered blanket
denials of wrongdoing, denied any knowledge of wrongdoing by
anyone else associated with Assara, and stated that he had
advised Assara employees not to post anonymous disparaging
comments about competitors.  But, the defendants' blanket
denials through Shuman's 2012 deposition do not address the
specific evidence linking particular website comments to
individual defendants and to Assara employees.  The comments
came from identities linked to their email accounts or IP
addresses at their homes and places of business.  Accordingly,
the Court has not construed Shuman's blanket denials of
wrongdoing as raising a question of fact.

---

[24] For example, during the conference on January 27, 2015, Shuman
admitted that Assara employees had authored some of the posts.
In his 2016 declaration, Tayar admits posting comments as
trex7740, but denies posting comments as Lisa2500.

**B. Unclean Hands**

In their cross-motion for summary judgment, the defendants primarily seek relief under the equitable doctrine of unclean hands.[25]  Unclean hands may be asserted as an affirmative defense to equitable claims in an action under Lanham Act § 43(a).  See Warner Bros., Inc. v. Gay Toys, Inc., 724 F.2d 327, 334 (2d Cir. 1983).  The doctrine of unclean hands allows a court, in its discretion, to decline to issue an injunction.  Dunlop-McCullen v. Local 1-S, AFL-CIO-CLC, 149 F.3d 85, 90 (2d Cir. 1998).  It is based "on the principle that since equity tries to enforce good faith in defendants, it no less stringently demands the same good faith from the plaintiff."  Id. (citation omitted).  Misconduct that is "unrelated to the claim to which it is asserted as a defense," however, "does not constitute unclean hands."  Id. (citation omitted).  Thus, "the defense of unclean hands applies only with respect to the right in suit."  Id. (citation omitted).  The doctrine of unclean hands "may be relaxed if defendant has been guilty of misconduct that is more unconscionable than that committed by plaintiff" and "in determining whether the doctrine of unclean hands bars an equitable remedy, courts are permitted to weigh the wrongdoing of the plaintiff against the wrongdoing of the defendant."  Id.

---

[25] The defendants also rely on unclean hands as an argument in opposition to the plaintiff's summary judgment motion.

at 92-93; see also 11A Wright, Miller, Kane, Federal Practice
and Procedure: Civil § 2946 (3d ed. 2015).

The unclean hands defense under New York law is virtually
identical.  In New York, courts in equity "apply the maxim
requiring clean hands where the party asking for the invocation
of an equitable doctrine has committed some unconscionable act
that is directly related to the subject matter in litigation and
has injured the party attempting to invoke the doctrine."
PenneCom, B.V. v. Merrill Lynch & Co., 372 F.3d 488, 493 (2d
Cir. 2004) (citation omitted) (applying New York law).

In support of their cross motion for summary judgment, the
defendants offer evidence that Romeo and Juliette's owner,
Karavolas, engaged in "astroturfing" in praise of his business.
Astroturfing refers to the practice of disseminating reviews
that a reasonable customer would believe to emanate from a
neutral third-party.  It is assumed that the defendants' motion
has presented sufficient evidence to support the motion even
though it did not include a Local Rule 56.1 Statement and its
citations to Karavolas's 2012 deposition testimony largely
reflect denials by Karavolas that he engaged in astroturfing.

The defendants have not shown that the doctrine of unclean
hands applies here.  The subject matter of this litigation is
the defendants' malicious internet posts about its competitor.
The plaintiff's astroturfing, which will be assumed for the

purpose of this motion, is not related to the defendants'
defamatory posts.  No one associated with the defendants has
testified that his or her postings, which were critical of the
plaintiff, were prompted or justified by the plaintiff's glowing
descriptions of its own business.  Moreover, the defendants'
false accusations that the plaintiff physically injured its
clients represent serious misconduct.  Accordingly, the
defendants have not shown that this affirmative defense should
prevent the issuance of a narrowly-tailored injunction.

### C. Laches

Defendants also argue that the plaintiff's claim for
injunctive relief is barred by the affirmative defense of
laches.  To win on the affirmative defense of laches, "a
defendant must prove that it has been prejudiced by the
plaintiff's unreasonable delay in bringing the action."
Conopco, Inc. v. Campbell Soup Co., 95 F.3d 187, 192 (2d Cir.
1996).  Fed. R. Civ. P. 8(c) requires that "[i]n responding to a
pleading," a party must "affirmatively state any avoidance or
affirmative defense, including . . . laches."

The plaintiff has been seeking an injunction since filing
its 2012 motion for summary judgment.  Thus, there has been no
delay in the pleading of the claim for relief.  Moreover, the
defendants did not raise laches as an affirmative defense in
their answer to the SAC.  This alone would bar this affirmative

defense.  Finally, the defendants have not articulated how they are prejudiced by the defendants' renewed request in 2015 for an injunction.  Accordingly, the laches defense is denied.

**D. Individual Defendants**

The plaintiff has brought claims against Assara and four individual defendants.  The claims against the individuals are brought to hold them responsible for the unfair competition in which they personally engaged.  The plaintiff has shown it is entitled to summary judgment as to Assara and Shuman.  The defendants has cross moved for summary judgment.  Its motion is granted as to defendants Jay and Dr. Tayar.  The plaintiff has presented evidence of direct personal conduct by defendant Shuman in support of their claims, but has presented no such evidence for defendants Jay or Dr. Tayar.  Accordingly, the plaintiff's claims against defendants Jay and Dr. Tayar are dismissed.

As noted, the plaintiff has submitted evidence that Tayar personally wrote comments about the plaintiff under three pseudonyms.  Given that Tayar has submitted a 2013 declaration describing his own experience as a client of Romeo & Juliette, there remains a genuine dispute of material fact as to the falsity of his statements.  Accordingly, defendants' motion for summary judgment cannot be granted as to Tayar.

## VI.  **Mootness**

The defendants have moved to dismiss all of the plaintiff's claims pursuant to Fed. R. Civ. P. 12(b)(1) on mootness grounds. In support of their motion, the defendants have submitted a declaration from Shuman stating that Assara ceased operations on December 23, 2015, that each of the defendants except Shuman has left New York, and that Assara "will never re-open."[26]  Shuman also presents the Covenant not to compete in the laser hair removal business for 10 years or post comments about the plaintiff's business, as well as documents related to Assara's lease termination in late 2015.  The defendants argue that these events and representations render the plaintiff's claims moot.

The mootness doctrine is derived from "Article III of the Constitution," which "grants the Judicial Branch authority to adjudicate 'Cases' and 'Controversies.'  In our system of government, courts have no business deciding legal disputes or expounding on law in the absence of such a case or controversy." Already, LLC v. Nike, Inc., 133 S. Ct. 721, 726 (2013) (citation omitted).  This case or controversy requirement "is not satisfied by a difference or dispute of a hypothetical or

---

[26] In support of this motion, the defendants have also submitted a 2016 declaration by David Tayar stating that (1) he has moved to Florida, (2) he has no intention of returning to New York, (3) he disposed of his interest in Assara in early 2014, and (4) he has no plans to go into any new business, "whether in the laser hair removal field or otherwise."

abstract character." Nike, Inc. v. Already, LLC, 663 F.3d 89,
94 (2d Cir. 2011) (citation omitted). Rather, a justiciable
controversy exists only where a dispute is "definite and
concrete, touching the legal relations of parties having adverse
legal interests." Id. (citation omitted).

The voluntary cessation exception to the mootness doctrine
recognizes that "a defendant cannot automatically moot a case
simply by ending its unlawful conduct once sued." Already, LLC,
133 S. Ct. at 727. As such, a party "claiming that its
voluntary compliance moots a case bears the formidable burden of
showing that it is absolutely clear the allegedly wrongful
behavior could not reasonably be expected to recur." Id.
(citation omitted); see also Holland v. Good, 758 F.3d 215, 223-
24 (2d Cir. 2014).

The plaintiff's claims are not moot. The defendants have
not shown that it is "absolutely clear" that their wrongful
conduct will not recur. The Covenant contains significant
authenticity and execution issues. Moreover, the defendants'
misrepresentations during this litigation counsel against
reliance on the representations they offer today. In opposition
to the defendants' motion to dismiss, the plaintiff has also
presented email correspondence between Tayar, his wife, Shuman,
and a laser equipment supplier/repairman in 2015 in which they
discuss replacement parts and potential "laser techs." As

recently as November 24, 2015, Shuman wrote to the supplier that he and Tayar were "discussing selling" an old laser and "purchasing or leasing a later model."  The plaintiff has also presented evidence that Assara is still registered as an active entity with the New York Department of State, that Assara's website is still live, and that Tayar still lists his Assara affiliation and address with the New York State Unified Court System.  Given the malicious nature of the internet postings, as well as the deceit involved in litigating this case, a simple promise by the defendants to cease their disparagement is not enough to moot this matter.

## CONCLUSION

The plaintiff's April 6, 2015 summary judgment motion is granted as to liability on Counts Five, Six, Seven, Eight, and Nine against defendants Assara and Will Shuman, and otherwise denied.  An injunction shall issue against these defendants pursuant to this Opinion.  The plaintiff's motion is denied as to the remaining defendants.  The defendants' June 8, 2015 motion for summary judgment is granted as to defendants Jay Shuman and Dr. Sam Tayar, and otherwise denied.  The defendants' February 9, 2016 motion to dismiss is denied.  A separate Order will be issued as to the plaintiff's remaining claims and the proceedings against David Tayar.

        SO ORDERED:

Dated:     New York, New York
           February 29, 2016

                          _____
                              DENISE COTE
                     United States District Judge