```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- X
ROMEO & JULIETTE LASER HAIR REMOVAL,     :
INC. d/b/a ROMEO & JULIETTE HAIR         :
REMOVAL,                                 :   08cv0442(DLC)
                                         :
                    Plaintiff,           :   OPINION & ORDER
                                         :
          -v-                            :
                                         :
ASSARA I LLC, d/b/a ASSARA LASER         :
CENTER NYC, ASSARA LASER and MANHATTAN   :
LASER HAIR REMOVAL, JAY SHUMAN a/k/a     :
JEROME SHUMAN, WILL SHUMAN, DR. SAM      :
TAYER, and DAVID TAYER,                  :
                                         :
                    Defendants.          :
                                         :
---------------------------------------- X
```

APPEARANCES

For plaintiff:

David K. Fiveson
Claudia G. Jaffe
Butler, Fitzgerald, Fiveson & McCarthy, P.C.
9 East 45th Street, Ninth Floor
New York, NY 10017

For defendants:

Will Shuman
160 First Avenue, Suite 5B
New York, NY 10009

DENISE COTE, District Judge:

On February 29, 2016, defendants Will Shuman ("Shuman") and Assara I LLC ("Assara") were found liable for unfair competition under the Lanham Act, and for defamation, disparagement, and unfair competition under New York law. Plaintiff Romeo &

Juliette Laser Hair Removal, Inc. ("Romeo & Juliette") now moves for attorneys' fees and costs pursuant to 15 U.S.C. § 1117(a). For the reasons that follow, the plaintiff's motion is granted in the amount of $30,000.

## BACKGROUND

This litigation has been long and contentious. The facts of this case are set out in this Court's February 29, 2016 Opinion granting in part the plaintiff's motion for summary judgment, Romeo & Juliette Laser Hair Removal, Inc. v. Assara I LLC, No. 08cv442 (DLC), 2016 WL 815205 (S.D.N.Y. Feb. 29, 2016) ("Liability Opinion"), familiarity with which is assumed. Here, a summary of the most germane facts will suffice.

Plaintiff Romeo & Juliette and defendant Assara were competing New York City laser hair removal businesses. Shuman and two others founded Assara in February 2006. Beginning in early 2006, a series of negative comments about the plaintiff's business appeared on the internet consumer forums HairTell.com, Yelp.com, CitySearch.com, and consumerbeware.com. The posts came from anonymous users who claimed to have used the plaintiff's laser hair removal services. Among those responsible for these negative posts were Shuman and Assara employees. A description of some of the negative posts as well as the evidence linking those posts to these defendants can be found in the Liability Opinion, 2016 WL 815205, at *2-*4.

On January 17, 2008, the plaintiff filed a complaint against Assara, Shuman, and three co-defendants asserting five causes of action for trademark infringement and unfair competition.[1] Shuman, who appeared pro se and on behalf of the other defendants, initially denied that any defendant was responsible for the negative reviews of the plaintiff posted on the internet. Shuman also maintained this position during his February 16, 2012 deposition. Yet when it came time to respond to the plaintiff's December 20, 2012 motion for summary judgment, the defendants changed their litigation posture and began to acknowledge their authorship of at least some of the defamatory statements. These eventual admissions occurred after Magistrate Judge Frank Maas granted the plaintiff's motion to compel discovery at a January 25, 2013 conference.[2] On July 2, 2013, Judge Maas awarded the plaintiff $6,945 in attorneys' fees

---

[1] This complaint was largely based on alleged violations of the false association provision of the Lanham Act, 18 U.S.C. § 1125(a)(1)(A). These claims arose from an alleged scheme by the defendants to manipulate consumers with Google searches and hidden links involving the "Romeo & Juliette" trademark. While the plaintiff has at various times during this litigation dropped and reasserted these claims, it abandoned them fully by the time the Liability Opinion was issued.

[2] On February 5, 2013, Shuman was fined $1,000 for false representations regarding his availability to appear at this conference. Romeo & Juliette Laser Hair Removal, Inc. v. Assara I, LLC, 924 F. Supp. 2d 505, 508 (S.D.N.Y. 2013). Shuman paid this $1,000 fine in full on February 28.

3

connected with this motion to compel ("July 2 Order").[3]  The plaintiff filed the currently operative Second Amended Complaint on October 1, 2013.

On April 6, 2015, plaintiff filed a motion for summary judgment seeking (1) a judgment of liability on its Lanham Act claim of unfair competition under 18 U.S.C. § 1125, and its state law claims of defamation, disparagement, and unfair competition; (2) an entry of a permanent injunction under the Lanham Act pursuant to 15 U.S.C. §§ 1116 and 1125; and (3) an award of costs and attorneys' fees pursuant to 15 U.S.C. § 1117(a).  The motion became fully submitted on June 22.  In response, the defendants filed a cross-motion for summary judgment on June 8, which became fully submitted on June 30.

On January 14, 2016, this case was reassigned to this Court.  On January 25, the Court held a conference with all parties, during which the Court, inter alia, set a briefing schedule on the issue of attorneys' fees and costs.  On February 9, defendants filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction on the ground of mootness, which became fully submitted on February 19.

On February 29, the Court granted the plaintiff's motion for summary judgment on liability as to defendants Assara and

---

[3] The attorneys' fees awarded in this Opinion are in addition to this previously awarded $6,945 in fees.

Shuman, and denied the motion as to the co-defendants. Liability Opinion, 2016 WL 815205, at *14. The Court also granted the defendants' summary judgment motion as to co-defendants Jay Shuman and Sam Tayar, denied their summary judgment motion as to the other defendants, and denied their motion to dismiss. Id. On the same day, the Court issued a permanent injunction against Shuman and Assara, barring them from making any public statements, on the internet or elsewhere, that are false, misleading, defamatory or disparaging about the plaintiff, the plaintiff's services, the plaintiff's principal or the plaintiff's employees.

The plaintiff filed its renewed motion for attorney's fees and costs on February 5, which became fully submitted on March 9. Given that the Liability Opinion was issued during the briefing of the plaintiff's motion for attorneys' fees and costs, the Court granted the defendants' request to file a sur-reply, which was filed on March 22. In connection with its pending motion, the plaintiff has submitted the billing statements of its attorneys from January 2008 through March 2016, and documentation of expenses paid to the forensic investigation firm Management Analytics. Plaintiff requests $334,934.26 for attorneys' fees and costs incurred through December 31, 2015, $10,100 in expenses paid to Management

Analytics, and the additional fees and costs incurred from January 1, 2016 onward.

## DISCUSSION

Under the Lanham Act, when a violation of § 1125(a) has been established in a civil action, a plaintiff is entitled "subject to the principles of equity . . . to recover . . . the costs of the action." 15 U.S.C. § 1117(a). Section 1117(a) further "authorizes the award of attorney's fees to prevailing parties in exceptional cases, which [is] understood to mean instances of fraud or bad faith." Patsy's Brand, Inc. v. I.O.B. Realty, Inc., 317 F.3d 209, 221 (2d Cir. 2003) (citation omitted).

Bad faith, however, is only a "prerequisite to a finding that a case is sufficiently exceptional to warrant an award of fees," Louis Vuitton Malletier S.A. v. LY USA, Inc., 676 F.3d 83, 108 (2d Cir. 2012) (citation omitted), and "the statute provides only that the district court 'may' award attorneys' fees." Patsy's Italian Rest., Inc. v. Banas, 658 F.3d 254, 268 (2d Cir. 2011); cf. Hensley v. Eckerhart, 461 U.S. 424, 437 (1983) ("A request for attorney's fees should not result in a second major litigation."). Although this Circuit has not defined "exceptional" in this context, the Supreme Court's recent construction of an identically worded provision of the patent laws, 35 U.S.C. § 285, offers guidance. There, the Court

6

held that "an 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position . . . or the unreasonable manner in which the case was litigated."  Octane Fitness, LLC v. ICON Health & Fitness, Inc., 134 S. Ct. 1749, 1756 (2014).  A "case-by-case exercise of [ ] discretion, considering the totality of the circumstances," determines whether a case is "exceptional." Id.  The Court further suggested that factors considered under a similar provision in copyright law -- "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case)," and the interests of compensation and deterrence -- were relevant to the inquiry. Id. at 1756 n.6 (citing Fogerty v. Fantasy, Inc., 510 U.S. 517, 534 n.19 (1994)).  In this District, courts "typically award Lanham Act fees based on extreme misconduct during litigation." River Light V, L.P. v. Lin & J Int'l, Inc., No. 13cv3669 (DLC), 2015 WL 3916271, at *10 (S.D.N.Y. June 25, 2015) (citation omitted).

By any measure, this case is exceptional.  Shuman, on behalf of himself and all of the defendants, denied for many years that any of the defendants were responsible for the negative reviews of the plaintiff posted on the internet, and only began admitting responsibility for some of the posts when forced to respond to the evidence presented in the plaintiff's

7

2012 motion for summary judgment. To assemble this evidence, the plaintiff had to engage the services of Management Analytics and to engage in third party discovery of internet service providers and others to track down the source of the postings. This was a burdensome and time-consuming task made necessary by the defendants' bad faith litigation tactics. As described in the Liability Opinion, Shuman himself was responsible for some of the derogatory anonymous posts. Liability Opinion, 2016 WL 815205, at *3. The plaintiff is therefore entitled to reasonable attorneys' fees under the Lanham Act.

The plaintiff requests $334,934.26 in attorneys' fees and costs incurred through December 31, 2015, plus additional fees and costs incurred since that date.[4] At most, the plaintiff is entitled to an award associated with some of the fees and costs incurred in a single year -- 2012. Focusing on that single year is appropriate for several reasons. The plaintiff bears partial responsibility for the tortuous history of this case. It has been partially responsible for both its delay and its complexity. And, of course, the plaintiff has been only partially successful. It has abandoned several of its legal claims. It has won a judgment against only two defendants; two

---

[4] The $334,934.26 in fees and costs does not include $26,562.50 in legal expenses already considered by Judge Maas in his July 2 Order.

Case 1:08-cv-00442-DLC   Document 314   Filed 04/05/16   Page 9 of 11
</sub>

other defendants have been dismissed from the case; and a trial has been scheduled for the remaining claims against the fifth defendant. The plaintiff has obtained an injunction, but has abandoned any claim for damages.

Among the reasons to exclude an award for the work preceding and following 2012 are the following. This lawsuit was filed in 2008, but it was not until the first amended complaint was filed in April of 2009 that the plaintiff added to its pleadings the legal theories related to the defamatory internet postings. Following that filing and a May 28, 2009 Order denying the plaintiff's motion for default judgment, this litigation was largely dormant until 2012. Indeed, the case was administratively closed. At the end of 2011, the Judge to whom this case was then assigned asked for an update from the parties. It was only after that inquiry that the plaintiff engaged in the bulk of discovery relevant here. Then, the plaintiff filed a motion for summary judgment in December of 2012. It is that motion that prompted the defendants' partial admission of involvement in the internet postings.

It is also significant that on January 10, 2013, the plaintiff represented to Magistrate Judge Maas that it was no longer seeking monetary damages. As a result, the only relief the plaintiff could legitimately seek after that point was an

</sub>

injunction and an award of attorney's fees and costs.[5]  It would be inappropriate -- at least in this case -- to award fees for work done after January 2013.  The plaintiff has not shown that all or most of the additional work was necessary to obtain an injunction.  Moreover, an award of fees for work that followed January 2013 risks encouraging the continuation of litigation for the purpose of increasing a fee award and punishing an adversary.

Since the bulk of the relevant discovery and motion practice that forced the defendants' partial admission of wrongdoing occurred in 2012, it is that year's fees and costs that are most relevant to this motion.  But, because the plaintiff has only achieved partial success, it would be inappropriate to award it fees for anything close to all of its fees and expenses for even that one year.  Having examined its billing statements for 2012, with particular attention given to those associated with preparation of its summary judgment motion, the Court concludes that an award of $30,000 for attorney's fees is warranted.[6]

---

[5] Despite that representation to Magistrate Judge Maas, on October 1, 2013, the plaintiff filed a Second Amended Complaint that was largely a carbon copy of its First Amended Complaint.  The plaintiff again abandoned its request for damages at the January 25, 2016 conference before this Court.

[6] The defendants do not contest that the hourly rates of plaintiff's counsel are reasonable.  Indeed, Magistrate Judge

## CONCLUSION

The plaintiff's motion for attorneys' fees and costs is granted against defendants Shuman and Assara, jointly and severally.  The plaintiff is awarded fees in the amount of $30,000.

SO ORDERED:

Dated:   New York, New York
         April 5, 2016

```
                    _____
                         DENISE COTE
                  United States District Judge
```

---

Maas found them to be so in his July 2 Order.